UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Comcast of Georgia/Massachusetts, Inc. and Comcast of Middletown, Inc. and Comcast of Boston, Inc. and Comcast of California/ Massachusetts/ Michigan/Utah, Inc. and Comcast of Maine/New Hampshire, Inc. and Comcast of Massachusetts I, Inc. and Comcast of Massachusetts II, Inc. and Comcast of Massachusetts III, Inc. and Comcast of Massachusetts/New Hampshire/Ohio, Inc. and Comcast of New Hampshire, Inc.<br><br>Plaintiffs,<br><br>vs.<br><br>Joseph Amaro, Dimas Amaro, and Joseph Amaro and Dimas Amaro, Jointly d.b.a. CABLEJOINT and D's Electronics<br><br>Defendants | Case No.:<br><br>COMPLAINT FOR VIOLATIONS OF TITLE 47 U.S.C. § 553 TITLE 17 U.S.C. § 1201, STATE STATUTORY AND STATE COMMON LAW<br><br>04 - 10414 RCL<br><br>MAGISTRATE JUDGE Cohen<br><br>RECEIPT # _____<br>AMOUNT $150<br>SUMMONS ISSUED Yes<br>LOCAL RULE 4.1 ____<br>WAIVER FORM ____<br>MCF ISSUED ____<br>BY DPTY. CLK. TOM<br>DATE 3/1/04 |

## NATURE OF ACTION

1. The Plaintiffs bring this Complaint to redress injuries they have suffered as a result of Defendants' cable television signal piracy.

2. Defendants' use of and, more importantly, their distribution of, statutorily prohibited non-addressable descrambling devices (commonly referred to and hereinafter referred to as "black boxes") primarily designed for the unauthorized interception of the plaintiff's cable television Programming;

    a. Violates provisions of Title 47 U.S.C. § 553;

    b. Violates provisions of Title 17 U.S.C. § 1201; and

    c. Violates provisions of state statutory and common-law

## PARTIES

3. Comcast of Georgia/Massachusetts, Inc. is a Rhode Island corporation, authorized to do business in the Commonwealth of Massachusetts.

4. Comcast of Boston, Inc. is a New York corporation, authorized to do business in the Commonwealth of Massachusetts.

5. Comcast of California/ Massachusetts/ Michigan/Utah, Inc. is a Delaware corporation, authorized to do business in the Commonwealth of Massachusetts.

6. Comcast of Massachusetts I, Inc. is a Massachusetts corporation.

7. Comcast of Massachusetts II, Inc. is a Delaware corporation, authorized to do business in the Commonwealth of Massachusetts.

8. Comcast of Massachusetts III, Inc. is a Delaware corporation, authorized to do business in the Commonwealth of Massachusetts.

9. Comcast of Massachusetts/New Hampshire/Ohio, Inc. is an Ohio corporation, authorized to do business in the Commonwealth of Massachusetts.

10. Comcast of Middletown, Inc. is a Delaware corporation authorized to do business in the Commonwealth of Massachusetts.

11. Comcast of New Hampshire, Inc. is a Maryland corporation authorized to do business in the Commonwealth of Massachusetts.

12. Comcast of Maine/New Hampshire, Inc. is a New Hampshire corporation authorized to do business in the Commonwealth of Massachusetts.

13. The Defendant, Joseph Amaro (hereinafter "Joe Amaro"), was and is an individual with his principal residence at 333 Cohannet St. Taunton, Massachusetts

14. The Defendant, Dimas Amaro (hereinafter "Dimas Amaro"), was and is an individual with his principal residence at 333 Cohannet St. Taunton, Massachusetts

## JURISDICTION AND VENUE

15. This action is brought pursuant to Title 47 U.S.C. § 553 and Title 17 U.S.C. § 1203.

16. This Court has original jurisdiction over this action under Title 28 U.S.C. § 1331. Venue is proper in the United States District Court in and for the District of Massachusetts pursuant to Title 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

17. Through various agreements with governmental entities, the Plaintiffs provide telecommunications services, including cable television services, to subscribers in much of Massachusetts, Connecticut and New Hampshire.

18. The Plaintiffs' "sister" corporate affiliates provide telecommunications services, including cable television services, to subscribers in forty-one (41) other states of the United States of America.

19. In order to provide cable television services to its subscribers, -Plaintiffs pay fees to programmers. The Plaintiffs then receive the programming from the programmers, mostly by way of interstate radio communications. The Plaintiffs then transmit said programming over its system. The signals the Plaintiffs transmit over their systems are private communications not intended for public use.

20. In order to protect their signals and maintain the value of their services, the Plaintiffs electronically encrypt and/or scramble some of their signals so that they must first be decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. The Plaintiffs encrypt and/or scramble signals for premium channels, such as HBO, Showtime, and Cinemax, for which subscribers pay a separate monthly subscription fee, and pay-per-view events, such as a specific movie, concert or sporting event, for which subscribers pay a specific one time charge to view each event. The Plaintiffs have provided subscribers with addressable electronic decoding equipment (hereinafter referred to as "decoders") to decode these signals. The Plaintiffs address (program or give instructions to) these decoders so that a subscriber may only view that level of service that the subscriber has purchased.

21. The encryption and scrambling of the Plaintiffs' signals are technological measures that effectively control access to their signals.

22. The Plaintiffs' signals predominately consist of Works protected by Title 17 U.S.C.

23. The Defendants, Joe Amaro and Dimas Amaro have been engaged in a scheme to illegally sell or otherwise distribute or otherwise traffic in non-addressable descrambling devices, black boxes and manufacture, assemble or modify same (with this scheme hereinafter sometimes referred to as the defendants " black box distribution business").

24. At certain relevant times the defendants operated their black box distribution business under the name "Cable Joint."

25. At certain relevant times the defendants operated their black box distribution business under the name "D's Electronics."

26. The defendants' black box distribution business included operating a website that allowed their customers to place orders over the Internet at www.CABLEJOINT.net.

27. The Defendants received multiple black boxes and/or electronic component parts for same from various black market third parties.

28. The black boxes manufactured and/or sold and/or distributed by the Defendants were capable of defeating the Plaintiffs' encoding and scrambling technology.

29. The black boxes manufactured and/or sold and/or distributed by the Defendants were primarily designed to circumvent the technological measures the Plaintiffs use to protect access to its signals and the Works protected by Title 17 U.S.C. carried on its signals.

30. The Defendants, assisted third parties in obtaining the Plaintiffs' signals without authorization and without proper payment by selling and/or distributing and/or providing and/or manufacturing approximately one-hundred eighty-two (182) black boxes, and possibly a much greater amount, to third parties, with the intent that the third parties would use the black boxes in the unauthorized interception of the Plaintiffs' signals or the signals of their sister corporate affiliates and/or knowing or having reason to know that the descrambling devices were primarily of assistance in the unauthorized interception or reception of the Plaintiff's cable television programming.

31. In the alternative or in addition to distributing the descrambling devices directly to third parties, the Defendants otherwise trafficked in descrambling devices.

32. Each Defendant used, and continued to use, at least one of the black boxes to receive, without authorization, scrambled or encoded programming and services offered over the system of the Plaintiff, Comcast of Georgia/Massachusetts, Inc. By using the unauthorized black box, each Defendant was able to view that Plaintiff's highest level of cable television programming and service, including premium channels and pay-per-view events, while only paying for a lower level of service.

33. The Defendants at all times pertinent hereto, and as alleged herein, were engaged in trade or commerce in the Commonwealth of Massachusetts:

   (a) Through the selling and/or distributing of black boxes to third parties; and/or

   (b) Through the modification, assembly or manufacturing of the black boxes for the benefit of third parties.

## COUNT I

### Violations of 17 U.S.C. § 1201

34. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 33.

35. The Plaintiffs' signals and the signals of their sister corporate affiliates are telecommunication transmissions that include Works protected by Title 17 U.S.C.

36. As to the black boxes referenced above, the Defendants either:

   i. Provided the black boxes or components thereof to third parties; and/or

   ii. Otherwise trafficked in said black boxes or components thereof And/or

   iii. Manufactured black boxes

all in violation of Title 17 U.S.C. § 1201(E)(2) which provides in part:

"no person shall manufacture, import, offer to the public, provide or otherwise traffic in a technology, product, service, device, component, or part thereof that — (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title …."

37. The Plaintiffs and possibly their sister corporate affiliates have been injured by the Defendants' violations.

## COUNT II

### Violation 47 U.S.C. § 553, Assisting Third Parties

38. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 37 above.

39. The Defendants assisted third parties in the unauthorized interception or reception of the Plaintiffs' cable television signals and possibly the signals of their sister corporate affiliates by selling and/or manufacturing and/or distributing black boxes with the intention that they would be used for the unauthorized reception or interception of Plaintiffs' cable television signals or the signals of their sister corporate affiliates in violation of 47 U.S.C. § 553 (a).

40. The Plaintiffs are persons aggrieved by the Defendants' violations of 47 U.S.C. § 553 and are authorized to bring this action pursuant to 47 U.S.C. § 553 (c)(1).

41. The Defendants sold and/or distributed and/or manufactured the black boxes to third parties willfully and for the purposes of commercial advantage or private financial gain in violation of 47 U.S.C. § 553.

42. The Plaintiffs did not authorize or consent to the Defendants' sale and/or distribution and/or manufacture of the black boxes.

43. The Defendants' violations have injured the Plaintiffs' ability to generate revenue by depriving the Plaintiffs and possibly their sister corporate affiliates of payment for its programming.

## COUNT III

## M.G.L. CH. 93A, § 2 AND § 11

44. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 43 above.

45. The Plaintiffs and the Defendants are engaged in trade or commerce.

46. The Defendants' actions, in selling and/or distributing black boxes to third parties and/or in the modification, assembly or manufacturing of black boxes for the benefit of third parties, were unfair and deceptive trade practices.

47. The above-referenced unfair and deceptive trade practices of the Defendants were undertaken willfully and knowingly.

48. The above-referenced unfair and deceptive trade practices caused proximate damage to the Plaintiffs, in violation of M.G.L. Ch. 93A, § 2 and § 11.

49. As a result of the foregoing, the Plaintiffs and possibly their sister corporate affiliates have been damaged in actual money damages.

## COUNT IV
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

50. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 above.

51. Defendants have intentionally interfered with the contractual relations between the Plaintiffs and possibly their sister corporate affiliates and their subscribers, with knowledge of the same, by inducing, procuring, conspiring, aiding and abetting an as yet undetermined number of subscribers not to perform their respective contracts, thereby causing the breach or termination thereof, and resulting in damage to the Plaintiffs and possibly their sister corporate affiliates.

52. Defendants have wrongfully interfered with the contractual relations between Comcast and its subscribers without justification or legal excuse. Defendants' interference was willful, wanton, malicious and with improper motive or method.

53. By reason of the foregoing, the defendants are liable for all pecuniary losses suffered by the Plaintiffs and possibly their sister corporate affiliates as a result of defendants' interference, and for punitive damages.

## COUNT V
## CONVERSION - IN CONCERT WITH OTHERS

54. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53 above.

55. The Defendants, through the sale and/or distribution of black boxes, acted in concert with other individuals who received black boxes to exercise dominion and control over the Plaintiffs' property and possibly the property of their sister corporate affiliates, the signals, programming and services offered over their systems, without authorization or legal right to do so.

56. The Defendants' conduct was willful, malicious, and wrongful, with the intent to deprive the Plaintiffs and possibly their sister corporate affiliates of their right to possession of their programming.

57. As a direct and proximate result of the Defendant's intentional, malicious, and wrongful conversion of the Plaintiffs' cable television services, the Plaintiffs and possibly their sister corporate affiliates have suffered monetary damages through the loss of income from all of the individuals who are receiving said unauthorized services; accordingly, the Defendants are liable for all of the Plaintiffs' and possibly their sister corporate affiliates' damages.

## COUNT VI
## CONVERSION, JOSEPH AMARO

58. The Plaintiff, Comcast of Georgia/Massachusetts, Inc., re-alleges and incorporates by reference paragraphs 1 through 57.

59. The Defendant, Joseph Amaro, exercised dominion and control over the Plaintiff Comcast of Georgia/Massachusetts, Inc.'s, property, its signals, programming and services offered over its system, without authorization or legal right to do so.

60. The Defendant's conduct was willful, malicious, and wrongful, with the intent to deprive Comcast of Georgia/Massachusetts, Inc., of the right to possession of its programming.

61. As a direct and proximate result of the Defendant's intentional, malicious, and wrongful conversion of the Comcast of Georgia/Massachusetts, Inc.'s signals, programming and services offered over its system it has suffered monetary damages; accordingly, the Defendant is liable for all of the Comcast of Georgia/Massachusetts, Inc.'s damages.

## COUNT VII
### CONVERSION, DIMAS AMARO

62.     The Plaintiff, Comcast of Georgia/Massachusetts, Inc., re-alleges and incorporates by reference paragraphs 1 through 61.

63.     The Defendant, Dimas Amaro, exercised dominion and control over the Plaintiff Comcast of Georgia/Massachusetts, Inc.'s, property, its signals, programming and services offered over its system, without authorization or legal right to do so.

64.     The Defendant's conduct was willful, malicious, and wrongful, with the intent to deprive Comcast of Georgia/Massachusetts, Inc., of the right to possession of its programming. As a direct and proximate result of the Defendant's intentional, malicious, and wrongful conversion of the Comcast of Georgia/Massachusetts, Inc.'s signals, programming and services offered over its system it has suffered monetary damages; accordingly, the Defendant is liable for all of the Comcast of Georgia/Massachusetts, Inc.'s damages.

## COUNT VIII
### VIOLATION Of TITLE 47 U.S.C. § 553, UNAUTHORIZED INTERCEPTION,
### JOSEPH AMARO

65.     The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64 above.

66.     The Defendant, Joseph Amaro's receipt of scrambled or encoded programming and services offered over Comcast of Georgia/Massachusetts, Inc.'s system was without its authorization, and violated 47 U.S.C. § 553(a).

67. Comcast of Georgia/Massachusetts, Inc. is a person aggrieved by the Defendant's violation of 47 U.S.C. §553 and is authorized to institute this action pursuant to 47 U.S.C. § 553(c)(1).

68. Comcast of Georgia/Massachusetts, Inc.'s cable transmissions and signals include communications services offered over a cable system and are protected by 47 U.S.C. § 553.

69. The Defendant knowingly and willfully intercepted Comcast of Georgia/Massachusetts, Inc.'s signals without authorization in violation of 47 U.S.C. § 553.

70. Comcast of Georgia/Massachusetts, Inc. did not authorize or consent to the Defendant's interception of its cable signals nor did it authorize or consent to the Defendant's utilization of the black boxes.

71. The Defendant's violations have injured Comcast of Georgia/Massachusetts, Inc.'s ability to generate revenue by depriving it of payment for its programming.

## COUNT IX
## VIOLATION Of TITLE 47 U.S.C. § 553, UNAUTHORIZED INTERCEPTION,
## DIMAS AMARO

72. The Plaintiffs re-allege and incorporate by reference paragraphs 1 through 71 above.

73. The Defendant, Dimas Amaro's receipt of scrambled or encoded programming and services offered over Comcast of Georgia/Massachusetts, Inc.'s system was without its authorization, and violated 47 U.S.C. § 553(a).

74. Comcast of Georgia/Massachusetts, Inc. is a person aggrieved by the Defendant's violation of 47 U.S.C. §553 and is authorized to institute this action pursuant to 47 U.S.C. § 553(c)(1).

75. Comcast of Georgia/Massachusetts, Inc.'s cable transmissions and signals include communications services offered over a cable system and are protected by 47 U.S.C. § 553.

76. The Defendant knowingly and willfully intercepted Comcast of Georgia/Massachusetts, Inc.'s signals without authorization in violation of 47 U.S.C. § 553.

77. Comcast of Georgia/Massachusetts, Inc. did not authorize or consent to the Defendant's interception of its cable signals nor did it authorize or consent to the Defendant's utilization of the black boxes.

The Defendant's violations have injured Comcast of Georgia/Massachusetts, Inc.'s ability to generate revenue by depriving it of payment for its programming.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for Judgment against the Defendants and request that the Court grant them the following relief:

1. Statutory damages (Plaintiffs reserve the right to also proceed seeking actual damages) against the defendants, jointly and severally, for the sale and/or distribution and/or trafficking and/or manufacturing of black boxes or components thereof as follows:

    a. $10,000.00 for each violation of 47 U.S.C. § 553(a)(2) for assisting others in the unauthorized interception of the Plaintiffs' signals by and through the distribution of and/or manufacture of the black boxes;

    b. $10,000.00 for each violation of 47 U.S.C. § 553(a)(2) for assisting others in the unauthorized interception of the Plaintiffs' sister corporate affiliates' signals by and through the distribution of and/or manufacture of the black boxes;

    c.    An additional $50,000.00 of enhanced damages for each violation of 47 U.S.C. § 553(a)(2) due to the fact that the black boxes were willfully distributed and/or manufactured for the commercial advantage or private financial gain of the Defendants pursuant to 47 U.S.C. § 553(c)(3)(B);or

    d.    Statutory damages of $2,500.00 for each black box or components thereof distributed and/or trafficked and/or manufactured in violation of 17 U.S.C. § 1201.

2.    Order an accounting by the Defendants, including, without limitation:

    a.    Accounting for all profits and expenses realized through the Defendant's black box distribution business;

    b.    Disclosing the names, addresses and any other identification information, of the individuals that received and/or purchased black boxes or components thereof from the Defendants and the dates of purchase and/or distribution of same;

    c.    Disclosing the names, addresses and any other identification information, of the individuals that distributed and/or sold black boxes or the component parts thereof to the Defendants and the dates of purchase and/or distribution of same;

    d.    Order the Defendants' production of all records reflecting the sale or distribution of black boxes to third parties; and

    e.    Order the Defendants' production of all records reflecting the purchase and/or receipt of black boxes by the Defendants.

3. Money damages in favor of the Plaintiffs and their sister corporate affiliates for all damages they have suffered as a result of the Defendants' conversion in concert with others;

4. In accordance with state common law, award the Plaintiffs compensatory damages, in an amount to be proved at trial for the Defendants' intentional interference with the Plaintiffs' or their sister corporate affiliates' contractual relations;

5. In accordance with state law, award the Plaintiffs punitive damages, in an amount to be proved at trial;

6. Statutory damages of $10,000.00 for the Defendant, Joseph Amaro's own unauthorized interception of signals in violation of 47 U.S.C. § 553(a),

7. Statutory damages of $10,000.00 for the Defendant, Dimas Amaro's own unauthorized interception of signals in violation of 47 U.S.C. § 553(a),

8. Money damages for the Defendant, Joseph Amaro's own conversion of the signals of Comcast of Georgia/Massachusetts, Inc.,

9. Money damages for the Defendant, Dimas Amaro's own conversion of the signals of Comcast of Georgia/Massachusetts, Inc.,

10. The Plaintiffs' attorney's fees and costs in prosecuting this lawsuit as provided for by 47 U.S.C. § 553(c)(2)(C) and/or 17 U.S.C. § 1203(b)(5) and/or provisions of M.G.L. Ch. 93A and/or as an element of common law punitive damages;

11. The issuance of a permanent injunction against all of the Defendants pursuant to Title 47 § 553 and 17 U.S.C. § 1203(b)(1) and/or M.G.L. Ch. 93A and state common law utilizing the following language or language of a similar nature:

> The Court hereby enjoins the Defendants, the Defendants' respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendants or acting on the Defendant's behalf from the further modification and/or use and/or sale and/or distribution of electronic equipment designed for the unauthorized interception of Comcast's signals or designed to circumvent the technological measures used by Comcast to protect access to Works protected by Title 17 U.S.C.;

12. In accordance with 17 U.S.C. § 1203(b)(2) and (6), impound all illegal scrambling devices in defendants' possession, custody or control, and further order the remedial modification or the destruction of such devices;

13. In accordance with provisions of M.G.L., Ch. 93A, § 2 and § 11, treble the damage award that is made for the Plaintiffs with reference to the Defendants' violations of the above referenced Federal statutes, state common law or provisions of M.G.L., Ch. 93A.

14. The Plaintiffs reserve the right to amend Complaint to include additional Plaintiffs and/or additional damages allegations.

15. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

16. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted for the Plaintiffs,
By Their Attorney,

2/27/04
Date

John M. McLaughlin
MCLAUGHLIN SACKS
3 Trumbull Road
Northampton, MA 01060
Telephone: (413) 586-0865

BBO No. 556328