C O M M O N W E A L T H   OF   M A S S A C H U S E T T S

Bristol, ss                    Department of the Trial Court
                               District Court Department
                               Taunton Division


COMMONWEALTH OF MASSACHUSETTS      )
                                   )
                                   )
          vs.                      )      No. 0231 CR 1053
                                   )
JOSEPH AMARO                       )

COMMONWEALTH OF MASSACHUSETTS      )
                                   )
                                   )      No. 0231 CR 1054
          vs.                      )
                                   )      VOL. I OF I
DIMAS AMARO                        )      Pages 1 - 18


HEARING ON THE MERITS, JURY-WAIVED
BEFORE THE HONORABLE GILBERT NADEAU


APPEARANCES:

FOR THE COMMONWEALTH:
DAVID A. KOLMAN, Assistant District Attorney

FOR THE DEFENDANT JOSEPH AMARO:
ROBERT C. HEROUX, Attorney at Law

FOR THE DEFENDANT DIMAS AMARO:
MICHAEL J. SUNESON, Attorney at Law

                          Taunton District Court
                          15 Court Street
                          Taunton, Massachusetts 02780
                          February 9, 2004

                     Transcribed by
                     Ellen H. Dibble
                     43 West St., #9
                 Northampton, MA 01060-3714
                     (413) 584-7657

LASER STOCK FORM B

THE CORBY GROUP 1-800-255-5040

2

# I N D E X

Waiver of jury, page 4
Stipulation, page 5

Statement of Attorney Kolman, page 6
Commonwealth rests, page 13

Motion for a required finding by Attorney Suneson, page 13
Attorney Heroux, page 15
Argument against a required finding, by Attorney Kolman,
    page 15

Finding by the judge, page 17


Witness          Direct     Cross     Redirect     Recross
(No witnesses.)


\* \* \* \* \*

Exhibit No.        Description                Page No.

1        Police report                    13
2        Records                          18
(For each exhibit, it is not obvious the exhibit was
received; and especially for Exhibit 2, it is not clear what
the exhibit might be.)

PENGAD • 1-800-631-6989

FORM FED

1    THE COURT:  With respect to Complaint Number

2  1054, Dimas Amaro, there are two counts?

3    ATTY. KOLMAN:  That's correct, Your Honor.

4    THE COURT:  Which allege the exact dates?

5    ATTY. KOLMAN:  July 1st to June 2nd, 2001.

6  Your Honor, the Commonwealth is moving to amend

7  all the counts, instead of violation of 166, 42B, as

8  noted, just for court jurisdiction, to 166, 42A, where

9  I believe there is (inaudible) -- just for court

10  jurisdiction.

11    THE COURT:  So is the Commonwealth moving to

12  amend it to Chapter 166, 42A.

13    ATTY. KOLMAN:  That's correct, Your Honor.

14    THE COURT:  On both 1053 and 1054.

15    UNIDENTIFIED DEFENSE ATTORNEY:  Right, Judge.

16    UNIDENTIFIED DEFENSE ATTORNEY:  Yes, Your

17  Honor.

18    THE COURT:  But there are two counts -- there

19  are still two counts standing?

20    ATTY. KOLMAN:  No, I'm sorry, Your Honor.

21  The Commonwealth's only dismissed one count as

22  duplicitous.

23    THE COURT:  Okay.  So count 2 of Complaint

24  Number 1054 is dismissed as being duplicitous.

1   Then I have all these motions that, Mr. Suneson,

2   that you had filed, right?

3       ATTY. SUNESON:   (Inaudible) just leave those

4   aside, Judge.   That's for the jury.

5       THE COURT:   All right.

6   Mr. Joseph Amaro and Mr. Dimas Amaro.

7   Joseph?

8       MR. DIMAS AMARO:   Dimas.

9       THE COURT:   Dimas.   Joseph.

10  I have in front of me both signed waivers of your

11  right to a trial by a jury.   Did you sign that freely,

12  willingly, and voluntarily, both of you?

13      UNIDENTIFIED DEFENDANT:   Yes.

14      OTHER DEFENDANT:   Yes, Your Honor.

15      THE COURT:   Okay.   And you understand and

16  your lawyers explained to you that you have a right to

17  have this matter tried before a jury, which would

18  consist of seven individuals, six of whom would be

19  determining your guilt or innocence.   And my role would

20  be to preside over that trial and to rule upon

21  objections and motions and to instruct the jury.   And

22  my role -- by you waiving your right to a trial by a

23  jury, I become now the fact finder, and you're leaving

24  a decision with respect to your guilt or innocence up

5

```
1        to me.

2            Do you understand that, gentlemen?

3                UNIDENTIFIED DEFENDANT:  Yes.

4                THE COURT:  Are you doing that freely,

5        willingly, and voluntarily?

6                UNIDENTIFIED DEFENDANT:  Yes.

7                OTHER DEFENDANT:  Yes, Your Honor.

8                THE COURT:  All right.

9            Okay.  I find that both jury waivers have been

10       made freely, willingly, and knowingly.

11           And the Commonwealth, are you ready to proceed?

12               ATTY. KOLMAN:  Yes, Your Honor.

13               THE COURT:  Okay.

14               ATTY. KOLMAN:  Your Honor, we have reached an

15       agreement, a stipulation in regards to the police

16       report in this matter.

17               THE COURT:  Okay.  Are there any other

18       stipulations?

19               ATTY. KOLMAN:  We do have a stipulation as

20       well of the disclaimer.

21               ATTY. SUNESON:  Right.  The stipulation of

22       fact, Judge.  I believe it's filed with the Court.

23               THE COURT:  I have that.

24           Do you want to sign that, Mr. Kolman?
```

1      ATTY. KOLMAN:  Yes, Your Honor.

2      ATTY. SUNESON:  And that would be for both

3  defendants, Judge.

4      THE COURT:  Maybe Mr. Heroux could sign that

5  as well.

6                          (Pause.)

7      THE COURT:  Thank you.

8      ATTY. HEROUX:  Thank you, Your Honor.

9                          (Pause.)

10      THE COURT:  Okay.  Does the Commonwealth

11  intend to call any witnesses?

12      ATTY. KOLMAN:  Oh, no, Your Honor.

13      The police report is stipulated to,

14  (inaudible), Your Honor, (inaudible) would testify to

15  what was in the police report.

16      THE COURT:  Right.

17      You may proceed.

18      ATTY. KOLMAN:  Thank you, Your Honor.

19      Your Honor, the Commonwealth, reading from the

20  police report, it's police report, report number

21  R02-0773, written by Investigator Philip Warish at the

22  Taunton Police Department.

23      Briefly, the facts of the police report are the

24  following, Your Honor.

1     This involves an investigation that occurred from

2     July 1st, 2000 to June 2001 where the defendants, Dimas

3     Amaro and Joseph Amaro, were in the business of selling

4     black boxes, also called converter boxes.  The purpose

5     of these boxes are that they can see receive every

6     channel from a cable company.  If a user were to hook

7     up these boxes, they can receive every channel from the

8     cable company; and they can receive every channel.

9        Now, in this investigation, they have an

10    informant, a Abby Vasconcellos, who at the time was in

11    a dating -- or had been in a dating relationship with

12    one of the co-defendants, a Dimas Amaro.

13       She spoke to an individual who worked for an

14    individual named Michael Wood, who was an AT&T

15    investigator.  Upon her conversation with Mr. Wood, she

16    stated that the defendant and the co-defendant were in

17    the business of shipping large boxes of -- large

18    shipments of converter boxes where they were received

19    from several companies; they would receive them and

20    then they would sell them out to other individuals,

21    including online, which would be -- online, in which

22    Dimas Amaro would either post it on E-bay, as well as

23    through Joe Amaro, who would sell locally.

24       Your Honor, several UPS -- several boxes were sent

1    to UPS which were seized, and in these boxes -- this

2    occurred around a period of March 2nd, 2001 to March

3    1st, 2001, (sic) Your Honor.  And when these packages

4    were seized, several items were found.

5        The first package was addressed to Dimas Amaro,

6    which contained -- at the residence of 333 Cohannet

7    Street.  It contained three converter boxes along with

8    a note indicating that two of the boxes were new but we

9    were unable to get it to scramble (phonetic); a third

10   box, which had been working properly, had suddenly

11   stopped.  This had a return address of an individual

12   who was located in Texas.  It appears she's looking

13   either for a replacement or a refund.

14       The second package seized, Your Honor, was to --

15   addressed to Joe Amaro.  It had a total of eight

16   converter boxes and four remote controls.  It appears

17   that upon investigation these boxes had been returned,

18   after examination, as several small notes had been

19   attached describing what had been wrong with the

20   converter boxes.  This was shipped from Wholesale

21   Electronics, which is a company in Las Vegas, Nevada,

22   which ships out converter boxes.

23       The third package as well was addressed to the

24   co-defendant, Joseph Amaro.  Again, this time it's 12

1    converter boxes, with instructions how to use converter

2    boxes to decode signals.  It also had a credit card

3    receipt, and it was again returned.  The address was

4    from Wholesale Electronics.

5        The fourth package was addressed to Dimas Amaro,

6    and it contained a global converter as well as a remote

7    box and wires.

8        All four of these packages were seized by the

9    Taunton Police Department.

10       In addition, it appears that more boxes were

11   seized on April 7, 2001, of pretty much the same

12   variety, Your Honor.

13       Investigation revealed a UPS shipment in excess of

14   100 packages delivered to the defendants.  This was

15   from Wholesale Electronics.  As well as there were 10

16   packages from another company called Clearview Cable,

17   with 16 packages from INB Group electronics.

18       And in total there were at least 108 packages that

19   were shipped to the defendant's address at -- the

20   co-defendants' address, at 333 Cohannet Street.

21       Your Honor, in addition, an employee of AT&T

22   (inaudible), Craig Frappier, with knowledge that some

23   of these with knowledge that some of these converter

24   boxes were being sold online, went to a site on -- went

1    to a web site for -- excuse me.  Went to a site to buy

2    the boxes and sent an e-mail, which was registered to,

3    I believe it was an E-bay site.  The e-mail was

4    addressed to Dimas Amaro, where he requested to buy

5    some boxes, converter boxes.  These boxes were sold to

6    him, and he did send the money for the boxes.

7        Your Honor, based on this information, police

8    obtained search warrants for the residences of Dimas

9    Amaro and Joe Amaro, which was located at 333 Cohannet

10   Street, first floor and the second floor.

11       Among the items seized were two computers in the

12   living room -- this is in regard to Dimas Amaro's

13   residence.  Two computers in the living room were

14   seized which had a customer list of individuals who the

15   converter boxes were sold to.  In addition, also found

16   were 900 mailers which were used to -- similar to the

17   one used to -- similar to the one used to send to one

18   of the investigators in this investigation.

19       There were also 112 U.S. Postal Service delivery

20   confirmations, and there were receipts, it appears,

21   from these (inaudible), from April 21st to June 16th,

22   2001.

23       One of these mailings was to the investigator who

24   bought the converter box, Your Honor.

1    Your Honor, in addition, both in regard to this

2    warrant, they spoke to the defendant, who made several

3    statements.

4    THE COURT:  Is this Mr. Dimas -- I mean,

5    Dimas?

6    ATTY. KOLMAN:  Dimas Amaro, yes.

7    He told the officer that it's not illegal to sell

8    the cable converter boxes.  He sent them with a

9    disclaimer, which was stipulated to, Your Honor.

10    In addition, he advised the officer that he was

11    not making very much money on these converter boxes.

12    He had not been in business very long, and that he had

13    checked with his attorney and was assured it was a

14    legal (phonetic) -- it was illegal for him to sell the

15    boxes after they were seized at UPS.

16    Your Honor, it should about noted that after the

17    boxes were seized at UPS, the defendants did switch the

18    address of where to send the boxes to, and used their

19    grandparents' address, as opposed to their own.

20    Your Honor, also the second floor of the

21    apartment, the residence of Joseph Amaro, was also

22    searched pursuant to a warrant.  Found were $7,800 in

23    U.S. currency, as well as an address book, which the

24    defendant Joe Amaro claims contains numbers of

1    Wholesale Electronics and Clearview Electronics, as

2    well as particular notes in regard to the cable

3    converters.

4        The defendant Joe Amaro also had a conversation

5    with police officers where he stated that several

6    individuals in the community had purchased several

7    boxes.  In addition, he wanted to know what was going

8    on and asked why -- about the packages as there were

9    receipts from UPS.  He stated to the officer that he

10   told his brother Dimas Amaro that, because they weren't

11   making much money on the boxes and they had been

12   seized, to get out of the business.  He also indicated

13   that they weren't making much money on boxes as they

14   had to pay shipping and frequently received defective

15   boxes.

16       Investigation was made on the boxes that were

17   seized, Your Honor.  They were able to scramble

18   (phonetic) cable channels.

19       And the witness Abby Vasconcellos had stated to

20   the officers that she had witnessed both defendants

21   selling these boxes in the period of time, Your Honor.

22       That's Commonwealth's -- Commonwealth rests, Your

23   Honor.

24           THE COURT:  Commonwealth rests?

 1          ATTY. KOLMAN:  Yes, Your Honor.

 2          THE COURT:  Mr. Suneson?

 3          ATTY. KOLMAN:  Actually, I'm sorry.  If I may

 4    submit the police report.

 5          (Commonwealth's Exhibit 1, police report,

 6           could have been admitted here.)

 7          ATTY. SUNESON:  Judge, we'd move for a

 8    required finding of not guilty, Your Honor.

 9       And the reason for it, Judge, is that the

10    Commonwealth's -- one of the elements they have to show

11    was the intent to defraud.

12       With the stipulation of fact and my brother's --

13    even all of it here, is that as a factual matter, my

14    client -- and it came forth, with regard to their

15    investigation of those cable boxes to begin with, that

16    when they wiped the hard drives, on each hard drive

17    there was a disclaimer to the effect that they were not

18    advocating the theft of cable services.

19       The boxes themselves are not illegal to possess.

20    They're not illegal to sell.  The only illegality comes

21    in if you intend to defraud the cable company.

22       With that stipulation of fact, Judge, there is no

23    intent to defraud.  That it's sold to customers, and

24    customers can buy that particular box instead of

1   renting a box from a cable service.  As long as they

2   take that box and they do what they do.

3        It's as if, Judge, going to the store on the

4   corner here, and asking them, I want a package of

5   rolling papers for my Bugle cigarettes.  As long as I

6   take those packets of rolling papers for my Bugle

7   cigarettes and I sell them with my Bugle cigarettes for

8   tobacco, I'm not committing any crime.

9        It's the fact that if I sell those packages of

10  rolling papers to somebody that I know is going to and

11  I know in fact is using them for marijuana cigarettes,

12  then in fact one could make the argument that there's

13  an intent there.

14       In this particular case, the Commonwealth has

15  not -- beyond all reasonable doubt, to even get to the

16  jury --

17            THE COURT:  That's -- that's --

18            ATTY. SUNESON:  No, that's -- just to get to

19  the jury.

20            THE COURT:  It's a different standard,

21  different standard.

22            ATTY. SUNESON:  I'm getting ahead of myself.

23            THE COURT:  Go ahead.

24            ATTY. SUNESON:  But just to get to the jury,

1   there has to be some evidence, somewhere, for the

2   Commonwealth.  The best light, best for the

3   Commonwealth here:  That my client intended to defraud

4   somebody, or this particular company.  And with that

5   stipulation of fact - that was before the Court - I

6   don't believe this case will ever get to the trier of

7   fact on that particular element.

8        THE COURT:  Mr. Heroux, do you want to add

9   anything?  I assume you're agreeing --

10       ATTY. HEROUX:  No, I would certainly join

11  along with my brother.  I would say it more eloquently

12  than he does, but he's brand new at this job, so.

13       THE COURT:  Mr. Kolman?

14       ATTY. KOLMAN:  Yes, Your Honor.

15       THE COURT:  Do you want to respond to the

16  motion?

17       ATTY. KOLMAN:  Yes, Your Honor.

18       Commonwealth believes that it does get by, Your

19  Honor, under the burden for a required finding.

20       The defendants were selling black boxes.  The

21  reason why block boxes are sold, Your Honor, is so that

22  people can get cable channels.  I would argue that

23  usually it's for people to get cable channels and not

24  pay for it.  Otherwise they would have to go through

1    the cable company themselves.

2         In addition, there's more -- there's more of an

3    indication of the defendants' culpability; Once the

4    items were seized from UPS, they changed the address to

5    their grandparents' address, Your Honor, so that they

6    would no longer have their name.

7         Your Honor, I feel that even with the disclaimer,

8    the defendants both knew what they were doing, and

9    their intent was to defraud the cable company.

10        For these reasons, the Commonwealth feels that it

11   meets it is burden to get past the required finding.

12        Thank you.

13             THE COURT:  Looking at the evidence in the

14   light most favorable to the Commonwealth under the

15   Lattimore standard, I'm going to deny both defendants'

16   motion for a required finding of not guilty on both

17   cases right now.

18        Does counsel -- do you wish to be heard any

19   further with respect to arguing?

20             ATTY. SUNESON:  No, Judge.

21             THE COURT:  Okay.  And you don't intend to

22   offer any evidence other than the stipulation?

23             ATTY. SUNESON:  Just the stipulation, Judge.

24             THE COURT:  Okay.  Do you want to add

1    anything further, Mr. Kolman?

2              ATTY. KOLMAN:  No, Your Honor.  It's the same

3    argument for reference to the hyber (phonetic).

4              THE COURT:  All right.  It's my understanding

5    this is a specific intent crime under 42A, and I've

6    read the statute.  I feel that the Commonwealth has not

7    met their burden with respect to the element of intent,

8    and -- beyond a reasonable doubt.  Therefore, there's

9    some reasonable doubt in my mind as to whether both

10   defendants intended to defraud, in accordance with the

11   statute.  Therefore I find you both not guilty.

12             ATTY. KOLMAN:  Thank you.

13             THE CLERK:  Dimas Amaro, Docket Number 02,

14   1054, count of unlawful possession of unlawful TV

15   devices, not guilty.

16        Joseph Amaro, docket number 02, 1053, unlawful

17   possession of a TV device, is also not guilty.

18             THE COURT:  Is there any other reason to hold

19   either of them?

20             THE CLERK:  I think that's it, Judge.

21             THE COURT:  Okay.

22             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

23             UNIDENTIFIED SPEAKER:  Thank you.

24             THE COURT:  Mr. Kolman, are these --

1          ATTY. KOLMAN:  These (inaudible)

2  these (inaudible).

3          THE COURT:  For evidence. Papers (phonetic)

4  from the --

5          ATTY. KOLMAN:  Yes, Your Honor.

6          THE COURT:  -- the cable company?

7        (Commonwealth's Exhibit, xxx,

8        <u>were admitted into evidence.)</u>

9          ATTY. KOLMAN:  If I may have one second, Your

10  Honor?

11        (Commonwealth's Exhibit 2, records,

12        <u>may have been received.)</u>

13          THE COURT:  Sure.

14                     <u>(Hearing concluded.)</u>

15

16               Certificate of Accuracy
     I, Ellen H. Dibble, do hereby certify that the foregoing is
     a true and accurate transcript, prepared to the best of my
17    ability, of the designated portions of the cassettes
     provided to me by the appellants or appellees of a hearing
18    in the matter of the Commonwealth of Massachusetts versus
     Joseph Amaro, Docket Number 0231 CR 1053 and Commonwealth of
19    Massachusetts versus Dimas Amaro, Docket Number 0231 CR
     1054, before Gilbert Nadeau, J., in Taunton District Court,
20    Taunton, Massachusetts, on February 9, 2004.

21  Date: 11/1/05   Transcriber: Ellen H. Dibble

22

23

24