UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (EASTERN DIVISION)

| | |
|---|---|
| Comcast of Georgia/Massachusetts, Inc. ) and Comcast of Middletown, Inc. and ) Comcast of Boston, Inc. and Comcast of ) California/ Massachusetts/ Michigan/Utah, ) Inc. and Comcast of Maine/New ) Hampshire, Inc. and Comcast of ) Massachusetts I, Inc. and Comcast of ) Massachusetts II, Inc. and Comcast of ) Massachusetts III, Inc. and Comcast of ) Massachusetts/New Hampshire/Ohio, Inc. and Comcast of New Hampshire, Inc.<br><br>    Plaintiffs,<br><br>    vs.<br><br>Joseph Amaro, Dimas Amaro, and Joseph Amaro and Dimas Amaro, Jointly d.b.a. CABLEJOINT and D's Electronics<br><br>    Defendants | Case No.: **04-cv-10414-RCL**<br><br>**MEMORANDOM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

    **I.**    **Introduction**

    The Plaintiffs, various New England Comcast corporate entities, brought a Complaint against the Defendants in March of 2004.  In the Complaint, the Plaintiffs alleged that they operate cable television franchises in portions of New England and that Defendants operated business of selling illegal cable descrambling devices; they also alleged that these devices could descramble their signals such that the users of the devices could get portions of the Plaintiffs' offerings without paying for signals.  The Plaintiffs alleged that this sale of illegal descrambling devices gives rise to various causes of action against the Defendants.  The causes of action, Federal Statutory Causes and State Statutory and Common-law Causes, were set forth in various Counts of the Complaint.

When the complaint was filed, the Plaintiffs also moved for an Impoundment Order whereby the Plaintiffs would receive the considerable amount of evidence that was then in the possession of the Taunton, Massachusetts Police Department.  This court granted that Order on June 1, 2004 and the Plaintiffs thereafter received the subject evidence from the Police Department.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted "if there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law".  The Discovery Period in this action has now concluded and the Plaintiffs have now considered the evidence in light of the pertinent Law. The Plaintiffs respectfully represent that there is no genuine issue of fact as to the assertions summarized below and as further set forth in the Plaintiffs' local rule 56(a)1 Statement filed herewith and hereby incorporated by reference.  More importantly, the Plaintiffs assert that based upon these facts they are entitled to Judgment as a matter of law.

The Plaintiffs have moved for Summary Judgment against the Defendants, Dimas Amaro and Joseph Amaro, jointly and severally, under four alternative claims with the Plaintiffs selecting whichever alternative results in the highest award. Specifically, the Plaintiffs are seeking:

1. An award of Statutory Damages for violations of 17 U.S.C. § 1201 pursuant to Count I of the Complaint in the amount of $215,000.00 and Plaintiffs are seeking an award for attorneys' fees and costs with specific amounts to be determined later; or

2. An award of actual damages ($372,460.000) and exemplary damages ($50,000.00) for violations of 47 U.S.C 553 pursuant to Count II of the Complaint in the amount of $422,460.00 and Plaintiffs are seeking an award for attorneys' fees and costs with specific amounts to be determined later; or

3. An award based upon the Defendant' profits ($130,000.00) and exemplary damages ($50,000.00) for violations of 47 U.S.C 553 also pursuant to Count II of the Complaint in the amount of $180,000.00 and Plaintiffs are seeking an award for attorneys' fees and costs with specific amounts to be determined later; or

4. An award for Actual Damages, as calculated in Count II above ($372,460.000) and thereafter to have the Court triple the Actual Damages for violations of the Massachusetts Unfair Trade Practices Statute, M. G. L. Ch. 93A § 2 and § 11, for a total award of $1,117,380.00 pursuant to Count III of the Complaint and Plaintiffs are seeking an award for attorneys' fees and costs with specific amounts to be determined later.

**II.     Pertinent Facts**

Along with the Subject Motion the Plaintiffs have filed their Local Rule 56(a)1 Statement.  The Plaintiffs have filed numerous Affidavits with supporting documentation to back up their Local Rule Statement.  The Plaintiffs' Local Rule Statement and the Affidavits contain voluminous details, only the most pertinent of which will be referenced and/or summarized if in this memorandum.

The Plaintiffs are in the business of distributing cable television signals throughout Comcast's various franchise regions in New England.  In order to protect their signals and maintain the value of their services, the Plaintiffs electronically

encrypted and/or scrambled some of their signals (premium channels and pay-per-view signals) so that they had to first be decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. The encryption and scrambling of the Plaintiffs' signals are technological measures designed to effectively control access to their signals.  The Plaintiffs' signals predominately consist of Works protected by Title 17 of the United States Code

    The Plaintiffs' legitimate authorized decoding equipment can be "addressed" by their computers. This means that the decoding equipment will take instructions from the cable company and will then only descramble the signals a subscriber is authorized to receive. A subscriber is authorized to receive those signals that he/she pays for. Non-addressable coaxial cable television descrambling devices have the ability to descramble cable television signals without being "addressed" from a cable television company's computer.  That means these devices can descramble signals without the authorization of the cable television company.  There is no legitimate purpose for non-addressable coaxial cable television descrambling devices.  Their only purpose is for the unauthorized interception of cable television signals through the unauthorized descrambling of premium channels and pay-per-view signals.  These devices are sometimes referred to and will hereinafter be referred to as "black boxes".

    From at least June of 2000 until the middle of June, 2001, the Defendants operated a commercial for-profit business with reference to the sale and distribution of black boxes. The Defendants distributed and/or sold black boxes with the intention that the black boxes would be of assistance in the unauthorized reception of cable television service. The Defendants distributed and/or sold black boxes that were

primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under Title 17 of the United States Code.  The Defendants' business was an unfair trade practice which predominately occurred in the Commonwealth of Massachusetts.

The Defendants received at least $130,000.00 in income derived from their sale and distribution of black boxes. From June 01, 2000 through June of 2001 the defendants sold and/or distributed, for commercial profit, at least 1,700 black boxes. Of the 1,700 black boxes sold and/or distributed by the Defendants, at least110 black boxes were sold and/or distributed by the Defendants directly into the cable television franchise areas of the Plaintiffs in this Action and at least 86 of the those 110 were sold and/or distributed after October 28, 2000.

During the pertinent period of time, from the middle of 2002 through late spring of 2005, the Plaintiffs were instituting changes whereby more and more of their signals were scrambled digitally as opposed to utilizing analog scrambling. Accordingly, the actual damage amount associated with the black boxes was gradually diminishing to the point where the subject black boxes can no longer be used to descramble the Plaintiff's signals. The actual damages associated with these 110 black boxes sold and/or distributed by the Defendants into the cable television franchise areas of the Plaintiffs in this Action is approximately, at least, $372,460.000.

The Defendants' actions, in selling and distributing black boxes were done willfully and for purposes of commercial advantage or private financial gain.  The

Defendants' actions, in selling and distributing black boxes were willful and knowing unfair trade practices.

The Defendants were criminally prosecuted under Massachusetts State Law with reference to their dealings in black boxes. In their criminal prosecution the Defendants contended and stipulated that they were indeed selling hundreds black boxes knowing the capabilities of the black boxes to descramble signals without the authorization of the cable television company.

### III.  Determination of the Pertinent Facts

#### 1.  Defendants' Stipulation at their Prior Criminal Trial

Most of the pertinent facts in this Action have already been determined because the Defendants stipulated to the facts in their related Criminal Actions, *Commonwealth V. Joseph Amaro*, 0231CR001053; and *Commonwealth V. Dimas Amaro*, 0231CR001054. The Defendants were charged with violations of Massachusetts criminal statutes, G. L. c.166 § 42B and they went to trial on February 9, 2004. The Transcript of their criminal trial is made an exhibit to one of the Affidavits filed herewith. From the transcript it is clear that the Defendants stipulated to the facts contained in the Police Report which was read into the record at their criminal trial.

Certain pertinent facts contained in the police report and stipulated to by the Defendants include, but are not limited to, the facts that:  The Taunton Massachusetts Police Department, as part of its investigation into this matter, intercepted numerous shipments of black boxes which were destined for the Defendants; In June of 2001 the Taunton Massachusetts Police Department, as part of its investigation into this matter, executed a search warrant on the Defendants' home and obtained computer records, inventory and other documentation regarding the Defendants' sale of black boxes;  The Defendants were in the business of selling black boxes; The Defendants knew the black

boxes could descramble cable television scrambled signals without the authorization of the cable television company and without payment to the cable television company; The Defendants sold hundreds of black boxes; The Defendant, Dimas Amaro, made most of his sales of black boxes over the Internet;  The Defendant, Joseph Amaro, made most of his sales of black boxes locally, in the Taunton, Massachusetts area.

After the police report was stipulated to, the Defendant's, through their Criminal Defense Attorneys, made a legal argument which they contended would be a defense to the criminal charges.  Specifically, they contended that even though they made their sales of black boxes they were not criminally liable because they utilized a so-called "disclaimer" when making their sales.  A disclaimer is essentially a document given to the purchaser of the black box informing them that they should not use the black box to descramble signals without permission of the pertinent cable television company. Essentially, the Defendants were admitting that they were selling hundreds of black boxes but that because they claimed that they told their purchasers not to use the black boxes as black boxes, they were not liable under the Massachusetts criminal statutes. Remarkably, the Defendants were successful with the "Disclaimer" defense and they were acquitted on the state criminal charges.

Yet, the use of disclaimers when selling black boxes is no defense in a Federal civil action.  From the reported cases, it appears that every Federal court that has ever considered the so-called "disclaimer" defense has uniformly rejected same as a defense to Federal Civil Liability. See: *ON/TV of Chicago v. Julien*, 763 F 2d 839 (7th Cir. 1985) where the Seventh Circuit Court of Appeals said that the trier of fact could easily find the disclaimer to be a "transparent attempt to deny the patent illegality of the defendant's

acts" id at 844;  *Time Warner Cable of New York v. Cable Box Wholesalers, Inc*., 920 F. Supp.1048 (D. Ariz.1996);   *Intermedia Partners Southeast v. QB Distributors,* 999 F. Supp. 1274 (D. Minn. 1988);   *Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp.124 (D.S.C. 1996);  *Time Warner Cable of New York City v. Freedon Electronics* 897 F.Supp. 1454 (S.D.Fla. 1995); *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019 (D. Neb. 1991); and   *Subscription Television of Greater Washington v. Kaufman* 606 F. Supp. 1540 (D.D.C. 1985) where the court described the disclaimer as "worthless". Id at 1543.  In fact, the 7th Circuit Court of Appeals even rejected the so-called "disclaimer" defense in a Federal Criminal case.  See *United States v. Gardner,* 860 F.2d 1391 (7th Cir. 1988) where the court found the disclaimer to be evidence establishing that the Defendant "was well aware that his actions were unlawful" *Id* at 1396.

Not only do the Plaintiffs contend that the "disclaimer" defense will not work in this Federal Civil Action but, based upon the Stipulation the Defendants made in their criminal trial, the Plaintiffs now contend the Defendants are also "Judicially Estopped" from denying the facts they stipulated to in their Criminal Trial.  The First Circuit has long recognized the concept and applicability of Judicial Estoppel.  See *Chrysler Corporation v Silva* (1st Cir. 1997); *Patriot Cinemas, Inc. v General Cinema Corp*., 834 F. 2d 208 (1st Cir.1987); *Hurd v Dimento & Sullivan*, 440 F. 2d 1322(1st Cir.), *cert. denied*, 404 U.S. 862, 92S.Ct. 164, 30 L. Ed. 2d 105 (1971); *Smith v Boston Elivated Railway Co*., 184 F. 387 (1st Cir. 1911)

The First Circuit Court of Appeals has said;

> Judicial estoppel should be employed when the litigant is "playing fast and loose with the courts" and when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Patriot Cinemas, Inc. v General Cinema Corp* at

> 211 quoting from *Scarano v Central R. Co.*, 203 F 2d 510 at 513 (3d Cir. 1953)

The Defendants in this action cannot be permitted to now deny that they were in the business of selling hundreds of black boxes without clearly playing "fast and loose" with this Court. They cannot admit to selling black boxes in the Massachusetts state District Court and then be allowed to deny that they were selling black boxes in this Federal District Court.   Additionally, even without the concept of "Judicial Estoppel" the statements made by the Defendants, through their Criminal Defense Attorneys' stipulations, are, at least, admissible against the Defendants.  See Federal Rules of Evidence 801.

### 2. Analysis of the Evidence Seized Through this Court's Impoundment Order

The Plaintiffs' employees/experts analyzed all of the evidence that was gathered by the Taunton, Massachusetts Police Department and that was seized by the Plaintiffs through this court's Impoundment Order of June, 2004.

This analysis included:  Testing and analysis of numerous cable boxes that were seized from UPS while in transit to the Defendants. This analysis evidenced, unequivocally, that the Defendants were receiving shipments of black boxes, including black boxes from a company known as "Wholesale Electronics";   Review of the UPS records which evidenced many past shipments from Wholesale Electronics; Testing and analysis of cable boxes being returned to the Defendants from various third parties along with the accompanying documentation. This analysis evidenced that third parties were returning boxes to the Defendants with the complaint that they were not descrambling; Testing and analysis of cable boxes being returned to the Defendants from other

companies along with the accompanying documentation. This analysis evidenced that the Defendants made warranty-like complaints to other distributors and those distributors repaired certain boxes such that after the repairs the devices were black boxes; Review and analysis of the computer records of the Defendants. This analysis evidenced, unequivocally that the Defendants had sold and/or distributed hundreds of black boxes including many sales made directly into the franchise areas of the Plaintiffs; Additionally, the computer records included records of the sale of a black box to an undercover agent of the Plaintiffs'. Separate analysis of the device in question additionally evidences the fact that it is a black box.

### 3. Further Discovery and Investigation

The discovery response from the Defendants in this action was not very useful. However, a subpoena served upon the PayPal company, an online payment system/company utilized by the Defendants, did yield some important evidence. Not only did the PayPal records back up the Defendants' computer records, but the PayPal Records went further back in time. The analysis of these records evidenced, unequivocally, that: .From June 01, 2000 through June of 2001 the Defendants sold and/or distributed, for commercial profit, at least 1,700 black boxes; Of the 1,700 black boxes sold and/or distributed by the Defendants, 110 black boxes were sold and/or distributed by the Defendants directly into the cable television franchise areas of the Plaintiffs in this Action; and 86 of the 110 black boxes that were sold into the Plaintiffs' franchise area were sold and/or distributed after October 28, 2000.

Additionally, the Plaintiffs' investigators actually tracked down a Massachusetts resident who, according to both the Defendants' computer records

and the PayPal Records, purchased a black box and later returned a black box for a replacement black box. The Comcast investigators went to the home of this individual, Richard Malcolm. Mr. Malcolm's wife voluntarily surrendered the subject black box to Comcast's investigators. Subsequent analysis confirmed that this device was indeed a black box of the same model shown in the records of the Defendants.

Afterward, Mr. Malcolm was the subject of a Civil Action in this Court. Mr. Malcolm settled Comcast's claim by agreeing to pay money to Comcast and by agreeing to give truthful testimony in this Civil Action. He has filed an Affidavit herewith wherein he clearly states that he purchased the device and it was indeed a device that descrambled the signals of Comcast in his hometown.

The Plaintiffs' investigator also went to the home of the Defendants in January of 2005. They were still actually customers of Comcast. A relative of the Defendants voluntarily surrendered a so-called homemade black box to the Plaintiff's investigator. Subsequent analysis of this device proved, unequivocally, that the device was indeed a homemade black box.

### III. Liability/Summary Judgment

**1**. **Summary Judgment**

Pursuant to Fed.R.Civ.P. 56, this Court should grant Summary Judgment where the evidence before the Court shows that there is "no genuine issue of material facts and that the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317 at 323 (1986). Also, the mere existence of some certain factual dispute will not necessarily defeat Summary Judgment. Assuming the law is with the

moving party, Summary Judgment should issue unless there is a genuine issue of material fact, See *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).

And issue of fact is "material" if the fact pertains to a necessary legal element of the claim based upon the pertinent statute or case law. See *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). A dispute over a material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to fight for the nonmoving party", *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) at 587.

Obviously, the First Circuit follows the Supreme Court precedents, but the first circuit has also made more detailed specific rulings with reference to Summary Judgment; specifically the First Circuit has found that:

a. While evidence must be taken in the light most favorable to the non-moving party, the Court need not "swallow the predicate for the non-movant's opposition hook, line and sinker; among other things we may safely ignore conclusory allegations, improbable inferences and unsupported speculation." *Cochran v. Quest Software, Inc., 328 F.3d 1, 6* (1st Cir. 2003); and

b. In order to succeed in stopping summary judgment the non-moving party must produce evidence other than just problematic or conjectural evidence. See *LeBlanc v Geat American Insurance Co.* 6 F.3d 836 (1st Cir. 1993);

In light of this case law and in light of the voluminous evidence against the Defendants, it does not appear that there can truly be any genuine issue of material fact as to any of the factual contentions referenced above. Clearly, the Plaintiffs have shown that the Defendants sold hundreds black boxes for commercial profit knowing the capabilities

of the boxes and knowing full well that the boxes were intended to be used for the unauthorized interception of signals.

## 2. 17 U.S.C. § 1201

The black boxes sold and/or distributed and/or manufactured (e.g. repairing returns) by the Defendants are primarily designed or produced for the purpose of circumventing a technological measure, cable television encryption, that effectively controls access to works protected under Title 17, the copyright protected works that make up most of the Plaintiffs' cable television signals.

The Defendants' actions clearly violate 17 U.S.C. § 1201(E)(2) which provides in part:

> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
>
> > (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title …

The elements of a violation of this provision of the statute (commonly referred to and hereinafter referred to as the "DMCA", the Digital Millennium Copyright Act) are as follows: a. The defendant trafficked in a technology; and, The technology was primarily designed or produced to circumvent conditional access controls to protected works or has limited commercial significant use other than such circumvention. See *321 Studios v Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004).

Defendant's actions clearly have the elements of the DMCA violations. They were essentially trafficking in devices (the black boxes) that would resign to circumvent access controls for protected works (descramble the copyright protected scrambled channels). Plaintiffs have shown that 85 black boxes were sold into their franchise areas after the effective date of the Statue in October, 2000.

### 3. 47 U.S.C. § 553

The black boxes sold and/or distributed and/or manufactured (e.g. repairing returns) by the Defendants were distributed or manufactured for the unauthorized interception of cable television services. The Defendants actions violate 47 U.S.C. § 553 (a) which provides in part:

> … (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

The Defendants' sale and/or distribution of black boxes is precisely what this statute is designed to stop. The factual, elements establishing liability under sections 553 (a)(2) of the Communications Act are: (1) the "manufacture or distribution" of a "device or equipment" and (2) that such equipment is "intended" . . . for the unauthorized "reception" or "decryption" of cable programming services.

Proof that the black boxes sold or distributed actually received any unauthorized cable programming services is irrelevant and not an element of liability. See

*United States v. Beale*, 681 F.Supp. 74 (D.Me. 1988). Legislative history confirms that subsection 553(a)(2) was "primarily aimed at preventing the manufacture and distribution of so-called 'black boxes" and other unauthorized converters which permit reception of cable service without paying for the service." H.R. Rep. No. 934, 98th Cong., 2d Sess. 84 (1984), <u>reprinted in</u>, 1984 U.S. Code Cong. & Admin. News 4655, 4721. The Plaintiff's have clearly shown that there were over 1,700 black boxes sold. Each sale would be a violation of this statue. More importantly, Plaintiffs have shown that 110 of these black boxes were sold by the Defendants into the franchise areas of the Plaintiffs.

**4. Massachusetts Unfair Trade Practices Statute, M. G. L. Ch. 93A § 2 and § 11**

The Defendants' black box distribution business also gives rise to liability under M.G.L. Chapter 93A § 2. M.G.L. Chapter 93 § 2 (a) provides "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful". In the case of *Quincy Cable Systems, Inc. v. Sully's Bar, Inc*., 684 F. Supp. 1138 (Mass. 1988) this Federal District Court found that where a bar intercepted signals, without authorization, in violation of Title 47, the bar's actions also amounted to a violation of M.G.L. Chapter 93A.

Clearly the Defendants' business of knowingly selling devices to third parties that allow the third parties to steal from the Plaintiffs' business is an unfair and/or deceptive trade practice. Accordingly, the Defendants' actions violate M.G.L. Chapter 93 § 2 (a). As if the

**5. State of Mind**

The fact that the Defendants' claim to have used disclaimers makes it clear they knew that the black boxes *could* be used for the unauthorized interception of the Plaintiffs cable

television signals. In fact, in a similar case a Federal District Court Judge found that the use of disclaimers was actually evidence that the defendants knew of the probability of the improper use of the black boxes purchased by their customers. See. *Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996).

The Defendants' intent to assist others in the unauthorized interception of signals can be logically inferred from the fact that they sold the black boxes and the fact that there is absolutely no legitimate use for a black box. See *General Instrument corp. v Nu-Tek Elec Mfg. Inc.* 3 F. Supp. 2d 602 (E.D. Pa. 1998), Intremedia *Partners Southeast v QB Distributors* 1998 999 F. Supp. 1274 (D. Minn.1998) and *Subscription Television of Greater Washington v. Kaufman* 606 F. Supp. 1540 (D.D.C. 1985). This reasoning was recently followed in a sister state within our First Circuit in the case. *See Cox v Violette* C.A. No. 02-338 ML (D.R.I. 2004), an unpublished decision. See copy attached as **Exhibit A.**

The sheer number of black boxes sold by the Defendants' is such that no reasonable person could truly believe they did not know what they selling. Additionally, the trade names used by the Defendants when they sold the black boxes are trade names that are common black box (descrambler) trade names and the pirate industry. Finally, the PayPal records occasionally actually used the term "descramblers".

### IV.    Damages

**1. 17 U.S.C. § 1201**

17 U.S.C.A. § 1203 (c)(3) provides for statutory damages for violations of §1201; specifically it provides

> "Statutory damages.--(A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just."

In a recent California case, the Court assessed statutory damages for pirate devices that could be used to alter the *Sony PlayStation 2* video game console such that the game would then allow a user to use a pirated/copied game on the console. The Court found statutory damages at $800.00 per device for each device sold before a "settlement agreement" and $2,500.00 for each device so after the agreement. See. *Sony Computer Entertainment America v Filipiak*, --- F.Supp.2d ----, 2005 WL 3556676 (N.D.Cal.2005).

The actual damages with reference the devices sold in the *Sony* case to not appear to be anywhere near as significant as the actual damages in this matter (see below). Accordingly, the Plaintiffs contend $2,500.00 is a reasonable statutory damage amount for each device in this action. The Defendants sold 86 black boxes into the Plaintiff's franchise areas after the effective date of the DMCA for a total statutory damage award of $215,000.00. Additionally, 17 U.S.C. § 1203(b)(5) bytes for attorneys' fees and costs. Plaintiffs seek an order that it is entitled to these but will seek a specific amount after tolling on its Summary Judgment Motion.

**2. 47 U.S.C. § 553**

    a.  **Actual Damages**

47 U.S.C. § 553(c)(3)(A)(i) provides that the court can award actual damages. Each black box distributed into the franchise area of the Plaintiffs would cause considerable actual damages. To calculate the monthly actual damages, at least three factors must be taken into account: a black box would allow for access to all of the analog premium

channels; a black box would allow individuals to view all of the many analog pay-per-view events offered during the month; and during the pertinent time the Plaintiffs were gradually and incrementally moving premium stations and pay-per-view offerings from analog channels to digital channels.

Taking all of these factors into account, the Plaintiffs estimate that a reasonable damage for each box sold into the Plaintiffs' franchise area is $3,386.00. 110 black boxes were sold into the franchise area of the Plaintiffs. Therefore the calculation for actual damages would be $372,460.00.

### b. Defendants Profits

47 U.S.C. § 553(c)(3)(A)(i) provides in pertinent part that the Plaintiffs may recover:

> any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation;

All the Plaintiffs need show is the Defendants' gross revenue, $130,000.00. To date it does not appear that the Defendants have claimed any deductible expenses; therefore, the Plaintiffs are seeking the entire $130,000.00. Take note that the Plaintiffs are entitled to *all* of the Defendants' profits including profits made from sales of black boxes into franchise areas that are not the Plaintiffs'. See. *Time Warner v. Worldwide Electronics*, 50 F.Supp.2d 1288 (S.D. Fla. 1999). Additionally, 47 U.S.C. § 553(c)(2)(C) provides for attorneys' fees and costs. Plaintiffs seek an order that they are entitled to these but will seek a specific amount after the Court's ruling on this motion.

**c. Exemplary Damages**

It is abundantly clear that the Defendants sold black boxes for profit. For one thing the records indicate that they sold particular models of black boxes at over a 100% markup from what they paid for them. Also, they describe their operation has a "Business" to the Taunton Massachusetts Police officers.

> 47 U.S.C. § 553(c)(3)(B) provides:
>
> In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

In light of the blatant and arrogant actions of these Defendants, they should be assessed exemplary statutory damages at the highest level. The Court should increase the damages award by $50,000.00 whether the award is made on actual damages or on the Defendants' profits.

**3. Massachusetts Unfair Trade Practices Statute, M. G. L. Ch. 93A § 2 and § 11**

> M.G.L. Ch. 93A, § 11, which provides in part:
>
> "If the Court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three but not less than two times such amount if the Court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section 2. For the purposes of this chapter, the amount of actual damages to be multiplied by the Court shall be the amount of the judgment on all claims arising out of the same or underlying transaction or occurrence, regardless of the existence or non-existence of insurance coverage available in payment of the claim."

Plaintiffs contend that the statute clearly justifies tripling the actual damage award made under 47 U. S. C. § 553 for a total award of $1,117,380.00. It is clear that the actual damage caused by the black boxes is the "amount of the judgment on all claims arising out of the same or underlying transaction." It is also clear that

maintaining a business whose sole purpose is to help individuals steal from the Plaintiffs' business is a knowing violation of §2. Therefore, this Court must at least double the actual damages for an award of $744,920.00. Yet, in light of these factual circumstances, the Plaintiffs contend that tripling the actual damages is appropriate and proper. Additionally, provisions of M. G. L. Ch. 93A provide for attorneys' fees and costs. Plaintiffs seek an order that they are entitled to these items, but they will seek a specific amount after the Court's decision on this motion.

### V.     Conclusion

Based upon all of the reasons and all of the authorities set forth above, the Plaintiffs are entitled to all relief sought in this Motion for Summary Judgment.

Respectfully Submitted for the Plaintiffs
By their Attorney,

2/02/2006
Date

/s/ John M. McLaughlin
John M. McLaughlin
**Green, Miles, Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01061-0210
(413) 586-0865