UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COXCOM, INC.
d/b/a COX COMMUNICATIONS
OF NEW ENGLAND

v.                              C.A. No. 02-338 ML

DONALD VIOLETTE

MEMORANDUM AND ORDER

This case is presently before the Court on Plaintiff Cox Communications' ("Cox") motion for partial summary judgment as to Count II of Plaintiff's complaint. Cox alleges that Defendant Donald Violette ("Violette") assisted others in the unauthorized interception of Cox's cable transmissions by selling them descramblers (also known as decoders or blackboxes), in violation of Title 47 U.S.C. Section 553 ("The Cable Act" or "the Act").

FACTS AND PROCEDURAL HISTORY

Cox, a cable company, provides cable services to subscribers in various localities including Newport, Rhode Island. Cox encrypts cable transmissions for certain premium channels (HBO, etc.) and pay-per-view movies, and these transmissions must be decoded in order to be viewed. "Addressable converters" are devices that convert and decode cable transmissions. Cable companies control subscribers' access to encrypted channels through this "addressable" equipment. "Non-addressable" devices commonly called "descramblers" or "blackboxes," allow one

-1-

to view encrypted channels without authority from the cable company. Because the devices are "non-addressable," the cable company cannot control them, or even detect that they are being used.

Cox's Loc. R. 12.1 statement lists the following undisputed facts: Violette ordered "non-addressable" blackboxes from AA Electronics, a New Jersey-based distributor of such equipment. He ordered four blackboxes over the course of the year in 1993, and one blackbox each year in the years 1994, 1995, and 1998. Of the total seven blackboxes that Violette ordered, he sold six to third parties, and charged them an extra twenty-five dollars for each box.

Violette admits to having knowledge that blackboxes intercept and decode cable transmissions without the cable company's authorization. He denies knowing that the blackboxes he ordered are capable of decoding, specifically, Cox's cable transmissions or even working in the region served by Cox. He also claims that he did not know that the third parties to whom he sold the blackboxes were going to use them in the Newport area, or that they were going to use the blackboxes to intercept, specifically, Cox's cable transmissions. Moreover, he claims that he did not know that the third parties were going to access the cable transmissions without the cable company's permission. Violette has failed to support his allegations with sworn testimony or affidavits.

Cox filed the instant civil action against Violette on July 29, 2002, for violating the Cable Act through the unauthorized interception of cable transmissions (Count I), and the distribution of "non-addressable" blackboxes to third parties (Count II). Cox has moved for partial summary judgment on Count II on the question of defendant's liability for assisting in the interception of unauthorized cable transmissions by distributing "non-

-2-

addressable" blackboxes. Cox asks that the issue of damages be determined at trial. During oral argument on the motion, the Court sua sponte raised the question of the statute of limitations pertaining to an action under The Cable Act. Pursuant to the Court's instruction, the parties have filed memoranda on the issue.

## STATUTE OF LIMITATIONS APPLICABLE TO THE CABLE ACT

The Cable Act does not prescribe a period of time within which actions filed pursuant to it must be brought. Generally, where a federal law or regulation does not provide a statute of limitations for the cause of action it creates, the court borrows a period from a state law analogous to the cause of action before the court. North Star Steel Company, 515 U.S. 29, 34 (1995). There is a "longstanding" presumption that Congressional silence on a limitations period in a federal law implies that a state statute of limitations generally applies. Id. at 35. A "closely circumscribed [and] narrow exception to th[is] general rule" directs the court to find a period of limitations prescribed by an analogous federal law, but this exception applies only when the relevant state statute of limitations would "frustrate or interfere with the implementation of national policies [or] the purpose or operation of the federal substantive law." Id. at 34-5 (citing DelCostello v. Teamsters, 462 U.S. 151 (1983)). If the state statute of limitations frustrates the purpose of the federal law, then the court may refer to the statute of limitations of a federal law that "clearly provides a closer analogy than available state statutes, *and* when the federal policies at stake and the practicalities of the litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." Id. (emphasis added). If, however, "a state counterpart provides a limitations period without frustrating consequences, it is simply besides the point that even a perfectly

good federal analogue exists." North Star Steel Co., 515 U.S. at 37.

Cox urges this Court to adopt the Rhode Island statute of limitations for conversion. Rhode Island has not specified a limitations period for conversion actions; however, the limitations period is ten years for civil actions whose limitations periods are not "specially provided" for by statute. R.I.Gen.Laws. § 9-1-13 (2002).

Relying on Prostar v. Massachi, 239 F.3d 669 (5th Cir. 2001), Violette asserts that the appropriate statute of limitations is the three-year limitations period found in the Federal Copyright Act. The Prostar Court applied the statute of limitations of the Federal Copyright Act, rather than Louisiana's one-year period of limitations for conversion. Id.

This is a case of first impression for this Court. Under the analysis set forth in North Star Steel Co., the first question this court must address is whether the application of a state statute of limitations would frustrate the purpose of the Cable Act. The primary purposes of the Cable Act are to deter the theft of cable services, and to provide "penalties and remedies" against those who steal cable services. See Prostar, 239 F.3d at 673; Kingvision Pay Per View, Ltd. v. Wilson, 83 F. Supp.2d 914, 918 (W.D. Tenn. 2000); Kingvision Pay Per View, Ltd. v. 898 Belmont Inc., 2002 U.S. Dist. Lexis 2275 at *4 (P.A. February 13, 2002).

Several courts have determined that the state statute of limitations for the tort of conversion applies to actions brought under the Cable Act. See Wilson, 83 F. Supp.2d at 919; Kingvision Pay Per View, Ltd. v. Bowers, 36 F. Supp.2d 915 (D. Kansas 1998). These courts found that the theft of cable services is like conversion because the defendant takes the property of another without permission, and exercises dominion

-4-

over it inconsistent with the owner's right to possession. Wilson, 83 F. Supp.2d at 919; Bowers, 36 F. Supp.2d at 918. Thus, the courts that have employed a state statute of limitations draw on the statute of limitations for the tort of conversion.

In this case, it is clear that application of Rhode Island's ten-year statute of limitations to an action stated under the Cable Act will not frustrate the purposes behind the Act. Ten years will give cable companies ample time within which to learn of, investigate, and prosecute any violations of the Act.

Following the mandate of North Star, this Court's search for an appropriate statute of limitations for Cox's claims is complete. Rhode Island's statute of limitations for conversion in no way frustrates or impedes any of the purposes of the Act. Notwithstanding this ruling, the Court will address Plaintiff's reliance on Prostar.

In Prostar, the Fifth Circuit reversed the district court which had applied Louisiana's one-year statute of limitations for conversion. Not surprisingly, Prostar, a broadcast licensee, argued that the three-year statute of limitations of the Copyright Act should apply. Even though the Fifth Circuit found Louisiana's one-year statute of limitations would not hamper the cable companies' ability to root out and prosecute offenders, the Court departed from the general rule and adopted a uniform period of time for actions filed by an industry the court found to be of a "multi-state nature."

In this case, however, the Rhode Island statute of limitations provides a more generous time frame within which to bring claims pursuant to the Cable Act. And, although the Prostar Court's favoring of a uniform national standard has a certain appeal, the fact remains that Congress has not seen fit to enact such legislation specific to the Cable Act. See 28 U.S.C. §1658 (2003) (applying prospectively since 1990, and

-5-

providing a general four-year period of limitations for legislation that does not cite a statute of limitations). This Court, therefore, declines to follow the lead of the Fifth Circuit.

This Court finds that Rhode Island's ten-year statute of limitations for the tort of conversion is the appropriate statute of limitations for the Plaintiff's claims. Since Plaintiff's claims fall within the ten-year period of limitations, they are not time-barred.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment or partial summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The facts and all inferences are viewed in the light most favorable to the nonmoving party. Tum v. Barber Foods, Inc., 331 F.3d 1, 5 (1st Cir. 2003). The moving party must show the Court that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. Malinowski v. Documented Vehicle/Driver Sys., 66 Fed. Appx. 216, 222 (2003).

Title 47 U.S.C. section 553 (a) states:

> No person shall receive or assist in the intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise by specifically authorized by law.

"Assist in intercepting or receiving" for the purposes of this section includes "the manufacture or distribution of equipment" which the manufacturer or distributor intends be used for the "unauthorized reception of any communications service" provided by a cable system. Title 47 U.S.C. section 553(b). Therefore, to distribute equipment capable of intercepting cable transmissions without authorization is to "assist in intercepting and receiving."

Violette argues that summary judgment must be denied because there are several facts in dispute. He asserts that he had no actual knowledge that the people to whom he resold the blackboxes would use them illegally. When Violette asserts that he had no actual knowledge that the blackboxes were to be used illegally, he essentially argues, but does not explicitly state, that he did not have the requisite intent to violate The Cable Act. Courts have found the nonaddressable nature of descrambling devices to be reliable evidence of a defendant's intent to assist in the theft of cable transmissions. Time Warner Cable v. Worldwide Electronics, Inc., 50 F.Supp.2d 1288, 1294 (S.D. Fla. 1999); TKR Cable Co. v. Cable City Corp., 1996 U.S. Dist. Lexis 11941, at *15 (N.J. July 26, 1996) . The "nature of the non-addressable, fully-descrambling" devices provide the "best evidence" for the violation of the Cable Act. Worldwide Electronics, Inc., 50 F.Supp.2d at 1294. The sale of blackboxes has only one purpose:

-7-

to descramble cable transmissions without the company's permission. Id.

Cox submitted an affidavit by its employee, Mark Matteo ("Matteo Affidavit"), stating that there is "no legitimate use for a blackbox" because its purpose is to descramble any and all transmissions without the cable company's authorization. Affidavit p. 2. Therefore, Violette's intent to assist with the unauthorized interception may be presumed because he knew the purpose of the blackboxes when he ordered and resold the devices. Violette has not proffered any evidence to the contrary.

Violette also argues that there is no proof that the people to whom he resold the blackboxes actually used the boxes within the region that Cox serves. However, "proof of actual interception is unnecessary" when the distribution of equipment for unauthorized interception of cable transmissions is proven. United States v. Beale, 681 F. Supp. 74, 76 (D. Me 1988). Violette has provided no evidence, such as affidavits from the people to whom he resold the blackboxes, to support the claim that the blackboxes he distributed were not used within Cox's region.

Next, Violette contends that there is no showing that blackboxes he resold had the capability to intercept Cox's cable transmissions. The Matteo Affidavit, however, confirms that the models resold by Violette were capable of intercepting Cox's cable transmissions. Affidavit p.3. Violette has failed to provide any supporting documentation that states otherwise. Violette has also failed to provide documentation that the blackboxes were not capable of working within the region that Cox serves. The Matteo Affidavit addresses this point and affirms that the blackboxes were capable of functioning within the area. Affidavit p. 3.

Finally, Violette argues that Cox is not a "person aggrieved" under the statute

because it has not demonstrated that the devices he sold were used to intercept Cox's cable transmissions. Violette essentially challenges Cox's standing to file this suit. Because Section 553 does not define the phrase, courts refer to Title 47 U.S.C. section 605, which states that "a person aggrieved" is "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming..." 47 U.S.C. §605(d)(6) (2003). Courts have interpreted the term broadly and held that a cable operator who has a proprietary interest in programming that is capable of being intercepted is "a person aggrieved." Adelphia Cable Partners v. E&A Beepers Corp., 188 F.R.D. 662, 665 (S.D. Fla. 1999); Kingvision Pay-Per-View, Ltd. v. Rocca, 181 F. Supp.2d 29, 34 (D.N.H. 2002). All the blackboxes Violette ordered were sent to the area where Cox provided services. Therefore, Cox is an aggrieved party because it is a cable operator that has a proprietary interest in the programming that was capable of being intercepted by the blackboxes resold by Violette.

## CONCLUSION

For the reasons stated, Plaintiff's motion for partial summary judgment as to Count II on the issue of liability is GRANTED in that Defendant is determined to have assisted others in the unauthorized interception of cable transmissions by distributing decoders with the intent that they be used for the same purpose. The issue of damages remains for trial.

SO ORDERED.

*[signature]*

Mary M. Lisi
United States District Judge
January 6, 2004

-10-