**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (EASTERN DIVISION)**

| | |
|---|---|
| **Comcast of Georgia/Massachusetts, Inc. and Comcast of Middletown, Inc. and Comcast of Boston, Inc. and Comcast of California/ Massachusetts/ Michigan/Utah, Inc. and Comcast of Maine/New Hampshire, Inc. and Comcast of Massachusetts I, Inc. and Comcast of Massachusetts II, Inc. and Comcast of Massachusetts III, Inc. and Comcast of Massachusetts/New Hampshire/Ohio, Inc. and Comcast of New Hampshire, Inc.,**<br><br>Plaintiffs<br><br>vs.<br><br>**Joseph Amaro, Dimas Amaro, and Joseph Amaro and Dimas Amaro, Jointly d.b.a. CABLEJOINT and D's Electronics,**<br><br>Defendants | Case No.: **04-cv-10414-RCL**<br><br><br><br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE JUDGMENT** |

**I. Objection**

Now come the Plaintiffs in this Action and for the reasons set forth below and based upon the authorities set forth below they vehemently object to the Defendants' "Motion to Vacate Judgment". The Plaintiffs will elaborate with authorities further below, but by way of the general statement of objections, the Plaintiffs contend that the Motion should be denied because:

1.    The facts in this case do not justify the granting of the Motion;

2.    By the Defendants' own admission they were aware of the Judgment against them by mid-December 2006.  With the Motion being filed in late March 2007 it is clearly not timely;

3.    The Defendants' vague self-serving affidavits in no way present meritorious defense when considered in conjunction with the Plaintiffs' Motion for Summary Judgment and the documentation and affidavits accompanying that Motion;

1

4.      The Defendants' Motion itself only moves to open the Judgment.  Despite
        having 3 1/2 months to prepare this Motion, the Defendants have not even
        proffered a proposed opposition to the Motion for Summary Judgment.

## II. Facts

The facts set forth below which pertain to this Motion are derived either from the docket
of record or from the affidavit of Plaintiffs' Counsel which is filed herewith:

1.      On March 1, 2004 the Plaintiffs filed this Civil Action alleging, in multiple counts, that
        the Defendants were in the business of distributing for-profit illegal cable television
        analog descrambling devices for the purpose of assisting individuals in the unauthorized
        interception of the Plaintiffs' cable television signals.

2.       Since May of 2004 all of the Defendants have been represented by Attorney Jordan
        Fiore.

3.      From early on in this Action, Attorney Fiore clearly had an e-mail account.

4.      Throughout 2004 and 2005 Plaintiffs' Counsel would mail hard copies of Pleadings to
        attorney Fiore's office in Taunton, Massachusetts.

5.       Throughout 2004 and 2005 Plaintiffs' Counsel would often communicate with Attorney
        Fiore through the use of e-mail messaging and phone calls.

6.      The Plaintiffs conducted fairly extensive written discovery and they deposed the
        Defendants and their Father.

7.      Plaintiff's counsel *never* told Attorney Fiore that the Plaintiffs were going to back down
        from the civil prosecution of this Action because of the alleged limited financial means of
        the Defendants.

8.      While the Defendants have contended that they are not of affluent means, Plaintiffs'
        Counsel consistently and constantly told Attorney Fiore that the Plaintiffs found his

2

Defendants' statements less than credible.

9.   During the course of this litigation Plaintiffs' Counsel pointed out to Attorney Fiore that certain facts suggest his clients may have more economic wherewithal than they are admitting to; specifically Plaintiffs' Counsel pointed out to Attorney Fiore that:

   a.   A mediation session had to be postponed because one or more of the Defendants was on vacation in Europe; and

   b.   One of the Defendants drove his late model Hummer automobile to his deposition.

10.   In late 2005 and early 2006 the Plaintiffs moved forward with all aspects of this litigation without hesitation; including serving the Defendants with amended 26(a) disclosures and expert disclosures/reports.

11.   The Defendants did absolutely no discovery and they never made any expert declaration.

12.   Throughout the discovery period the Defendants would often be woefully late in their required responses. In fact, some discovery has still gone without proper responses.

13.   Plaintiffs' Counsel repeatedly told Attorney Fiore that the Plaintiffs would be going forward with a Summary Judgment Motion unless a settlement was reached.

14.   Plaintiffs' Counsel e-mailed a draft of the Plaintiffs' Motion for Summary Judgment to Attorney Fiore on December 29, 2005.

15.   Plaintiffs' Counsel's office staff e-mailed Attorney Fiore on January 18, 2006 stating:

   "We are working on lengthy affidavits and it would appear that your clients will be hit with a summary judgment for many black boxes.  As Attorney McLaughlin said before, he wants to talk to you about resolving this matter.  He strongly urges you to contact him as soon as possible.  He said your clients will not be able to refute the numbers that come through in these affidavits."

16.   Attorney Fiore did not contact Plaintiffs' Counsel prior to the Plaintiffs bringing the Motion for Summary Judgment; in fact, Attorney Fiore did not contact Plaintiffs' Counsel

3

again until mid-December of 2006, over 11 months after Plaintiffs' Counsel implored

Attorney Fiore to contact him.

17.    After January 2006 Plaintiffs' Counsel no longer served hard copies of filed pleadings on

Attorney Fiore.

18.    Plaintiffs' Counsel believed that Attorney Fiore had abided by the local rule requiring that

he be electronically registered as of January 1, 2006.  Plaintiffs' Counsel knew he had an

e-mail account and Plaintiffs' Counsel believed Attorney Fiore had a PACER account.

19.    The Plaintiffs Motion for Summary Judgment was filed on or about February 3, 2006.

20.    There was no response to the Motion for Summary Judgment and this honorable Court

granted the Motion on June 16, 2006.  Thereafter, on July 10, 2006 the Plaintiffs filed an

affidavit in support of attorney's fees.

21.    On November 22, 2006 Judgment was entered for the Plaintiffs based upon the Summary

Judgment Order and the attorney's fees affidavit.

22.    The Plaintiffs have considered this case over and done with.  Plaintiffs' Counsel has not

had contact with many of the witnesses who executed affidavits for the Summary

Judgment Motion in well over a year.

23.    To get this case up and running again will entail a burden on the Plaintiffs.  Each and

every witness must be contacted and their whereabouts verified. The passage of time will

force the Plaintiffs and their witnesses to do additional work to prepare for the case going

forward again.

24.    At some point after the Judgment entered in this Action Plaintiffs' Counsel took note of

the fact that the pre-judgment interest appeared to be calculated too high.  Plaintiffs'

Counsel was intending on giving the Judgment to a collection law specialist but the

Plaintiffs did not want to give an inaccurate judgment to the collection attorney.

4

Accordingly the Plaintiffs intended to move the Court to Amend the Judgment to more accurately reflect the appropriate prejudgment interest amount. The motion would have been totally to the benefit of the Defendants.

25.  In conformity with the local rules Plaintiffs' Counsel contacted Attorney Fiore by phone to see if he would have any objection to the Plaintiffs moving to reduce the prejudgment interest amount. Plaintiffs' Counsel left a phone message regarding the proposed motion.

26.   A day or two later, on December 13, 2006, Plaintiffs' Counsel received a phone call from Attorney Fiore telling him that he had never received any pleadings or any of the Court's documents during the entire year of 2006. Plaintiffs' Counsel told Attorney Fiore about the local rule requiring that he be electronically registered and Plaintiffs' Counsel questioned him why he had apparently not looked at this Civil Action for a year. Attorney Fiore had little answer for Plaintiffs' Counsel at that point in time.

27.  Attorney Fiore told Plaintiffs' Counsel on December 13, 2006 or shortly thereafter that he then had access to what had been filed electronically and to this Court's orders/judgment. He said that absent any settlement he would most likely *soon* be moving to vacate the judgment.

28.  It is now *over 3 ½ months later* and the Defendants are finally moving to vacate the Judgment.

**III. Discussion/Authority**

**1. Defendants' Failures**

It seems quite clear that the present situation has come about because of four failures on the part of the Defendants:

a.    Defendant's Counsel failed to register for the Courts electronic filing system before January 1, 2006 even though such registration was clearly required by LR, D. Mass 5.4. Due to this failure Defendants' Counsel did

5

not receive the Plaintiffs' filings or the Orders and the Judgment of this honorable Court;

b.      The Defendants and their Counsel did absolutely nothing to defend this case for almost a year.  Plaintiffs' Counsel sent an e-mail to Defendants' Counsel in January of 2006 imploring him to contact Plaintiffs' Counsel or else the Motion for Summary Judgment would be forthcoming.  Not only did the Defendants' Counsel not get back to Plaintiffs' Counsel, but the Defendants apparently did nothing at all whatsoever in defense of this Civil Action until their Motion to Vacate was filed on March 26, 2007 after allegedly becoming first apprised of the situation December of 2006. The Defendants and their Counsel apparently totally ignored the civil action.  They apparently made no inquiries about the case even though the case would have presumably gone to trial by December of 2006.

c.      Even though the Defendants were clearly aware that the Judgment had entered against them by on or about December 13, 2006, they did not make the Motion to Vacate the Judgment for another 3 1/2 months.

d.      To this date, the Defendants have done nothing specifically with reference to the Plaintiffs Motion for Summary Judgment.  Despite the fact that they took 3 1/2 months to file the subject Motion they have not filed any motion for relief of this Court's Order on Summary Judgment.  They also have not even filed or proffered any formal response with reference to the Motion for Summary Judgment.

## 2.  The First Circuit Court of Appeals and Fed. R. Civ. P 60(b)(6)

Even though there is now a "Motion to Vacate Judgment" before the Court, the Motion itself does not state precisely which rule is the authority for the Motion. Yet, in the Memorandum which supports the Motion, the Defendants argue that Fed. R. Civ. P 60(b)(6)

justifies vacating the Judgment on the grounds that they were not served the "motion or the notice".

Fed. R. Civ. P 60(b)(6) is the so-called "catch-all" provision.  The First Circuit Court of Appeals has ruled that relief from this catch-all provision should only be granted:

a.    In exceptional circumstances that justify extraordinary relief. See *Valley Citizens for a Safe Environment v. Aldridge,* 969 F.2d 1315 (1st Cir. 1992);

b.    When the moving party is "faultless".  See *Claremont Flock Corp. V Alm* 281 F.3d 297 (1st cir. 2002);

c.    If the motion is made in a reasonable time and what is "reasonable" depends upon the circumstances of each case. See *Cotto v U.S.* 993 F. 2d 274 (1st Cir. 1993); and

d.    When the moving party shows that it has a meritorious claim or defense. See *Cotto v U.S.* 993 F. 2d 274 (1st Cir. 1993).

The Defendants are trying to make out a case calling for extraordinary relief because they are apparently claiming they are faultless in not receiving "motion or the notice" but nothing could be further from the truth.  The Defendants are not faultless and the entire situation was created by their own failures and willful disregard for any responsibilities as to defending the case. The reason they did not get any actual notices or pleadings in their hands is because Defense Counsel was apparently unaware of the rules of this Court and the Defendants and their Attorney ignored this Civil Action for close to a year. They are not faultless and this is not a fact pattern which would justify relief.  It was the Defendants' own willful disregard for the rules and willful disregard of the case for close to a year that made it so they did not receive the "motion or the notice".  As such, they are far from faultless and this is not a situation where relief should be granted.

**3.  Constructive Notice**

Another possible way to look at this case is to say that the Defendants received "constructive notice" of the "motion or the notice". The finding of "constructive notice" is entirely appropriate based upon the facts in this case. At least one Federal District Court has already dealt with the issue of an attorney failing to respond to a summary judgment motion because the attorney had failed to register for electronic filing (ECF) in the Federal Court. See *Internet Financial Services v Law Firm of Larson-Jackson,* Civil Action No. 02-1207 (D. D. C. 2005) (A copy of this unpublished case is attached hereto as **Exhibit A**).

In the *Internet Financial* case the defense attorney did not actually receive notice of certain motions and orders because he had failed to abide by a local rule which required him to electronically register. The defense attorney also did not look at the case in question for over five months. The *Internet Financial* District Court said many things that are totally appropriate to this case:

a. The *Internet Financial* District Court said, in discussing the feigned ignorance of the defendants, "Their asserted ignorance is not to be credited because the record demonstrates that Mr. Larson-Jackson was either derelict in his duties as attorney for the defendants or just put this case aside". *Id at page 8.* This clearly applies to the Defendants in this Action, except the Defendants in this Action "put the case aside" for almost a year;

b. In discussing the fact that the defendants claimed to be unaware of certain filings the *Internet Financial* District Court said "Any failure to receive such filings is solely attributable to the neglect of Mr. Larson-Jackson as attorney for the defendants… He was also under an obligation to file and use ECF, but he did not." *Id at page 9.* This is exactly the same situation in regards to the Defendants in this Action and their Attorney; and

c. Finally, when discussing the local rule provision regarding ECF the court

8

said "Accordingly, the Court employs the presumption in the local rules

that attorneys practicing in this Court have registered for ECF access, and

that defendants, through Mr. Larson, had constructive, if not actual, notice

of all filings." *Id at page 9.* The exact same thing can be said in this

Action.

Whether we find the Defendants are far from "faultless" or whether we find that they

had constructive notice of the subject filings there is clearly no reason to grant relief pursuant to

Fed. R. Civ. P 60(b)(6).

**4. The First Circuit Court of Appeals and Fed. R. Civ. P 60(b)(1)**

In some portions of the Defendants' Memorandum they seem to be attempting to set

forth excuses as to why n they did not obtain the proper notices.  In essence they are attempting

to argue that this was a case of excusable neglect.  While, in some instances excusable neglect

could justify relief from an order pursuant to Fed. R. Civ. P 60(b)(1), the facts in this case do

not justify relief.

The fact pattern in this case is remarkably similar to the facts in the case of *Stonkus v*

*City of Brockton School Department* 322 F 3d  97 (1st Cir. 2003).  In the *Stonkus* case the first

circuit Court of Appeals upheld the decision of the Honorable Judge Reginald C. Lindsay

where he had denied a Motion for Relief from Judgment pursuant to Fed. R. Civ. P 60(b)(1) .

In the *Stonkus* case the court scheduling order called for motions by June 18, 2002 with

the responses 30 days thereafter.  The defendants filed a motion for summary judgment on June

18, 2002.  The plaintiff never responded to motion for summary judgment and on August 15,

2002 the court allowed the motion for summary judgment.  Thereafter on August 19, 2002

judgment entered in favor of the defendants. The defendant moved to vacate the judgment and

that motion was denied.

The Court of Appeals in the *Stonkus* case reviewed the District Court decision based

upon the United States Supreme Court case of *Pioneer Inv Services Co. v Brunswick Associates*

*Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489 123 L.Ed. 2d 74 (1993). When considering whether to grant relief from an order the *Pioneer Investment* decision advises the District Court to consider certain circumstances, including:

1. The danger of prejudice to the non-moving party;

2. The length of the delay on the part of the moving party;

3. The potential impact of the delay on the judicial Proceedings;

4. The reason for the moving party's delay; and

5. Considering whether the delay was within the reasonable control of the moving party.

In the *Stonkus* case the plaintiff's attorney claimed that he was distracted by the "frenetic activity to complete discovery" such that he missed the date on which to respond to the defendant's motion for summary judgment. The Court of Appeals considered the *Pioneer Investment* criteria and affirmed Judge Lindsay's decision to deny relief.  If anything, when the considerations to be taken into account from the *Pioneer Investment* case are applied to the facts in this case there are even more compelling reasons to deny relief.

It would clearly be prejudicial to the Plaintiffs if they were now forced to have to go back to where they were over a year ago.   There are many witnesses involved with the Plaintiffs' case, including many who are not Comcast employees.   The simple passage of time, in this case will over year, will make it difficult for the Plaintiffs to pick up where it left off.  In fact, in the *Stonkus* case the Appellate Court found that there would be prejudice to the non-moving party in that case.   The court said "… the delay incurred by Stonkus's  failure to respond service to hamper the defendants' interest in certainty and resolution and to further diminish the witnesses' memories concerning the events surrounding Stonkus's claims, now more than six years old." *Id* at 101. In the case against the Amaros some of the pertinent facts now also go back six years.

In this case, the delay has been substantial.  The response to the Plaintiffs' Summary

10

Judgment Motion should have been filed on or about February 17, 2006.  Instead, there is now a motion to vacate the judgment which has been filed in March of 2007.  This is a substantial delay, far more than the delay in the *Stonkus* case.  It will clearly have an impact on the judicial proceedings in this case. Absent this delay, this case would have probably gone to trial or it would have long been resolved by Summary Judgment at this point in time.

        The cause for delay rests squarely at the feet of the Defendants. It was Defendant's Counsel that clearly violated the local rules by failing to register for ECF.  And it was the Defendants and their Counsel who did absolutely nothing on this case from when the Summary Judgment Motion was filed in February of 2006 until they filed their Motion for Relief in March of 2007.  Also, there may be some lack of good faith with reference to the Motion for Relief in that the Plaintiffs would contend that they never said or did anything that would make the Defendants believe Comcast was going to walk away from this case because the Defendants claimed to be poor. The Defendants' statements to the contrary in their Motion for relief are dubious at best.

        There are two other items from the *Stonkus* case that are clearly applicable to the facts in this case.  First off, the Appellate Court took note of the fact that while the plaintiff in the *Stonkus* case had made a motion for relief from the judgment the plaintiff, like the Defendants in this Action, had never proffered a proposed opposition to the summary judgment in the District Court.  This is a factor that should clearly be held against the Defendants in this Action and should weigh against them receiving any relief.   Secondly, while the mistake of Defendant's Counsel, in failing to register for ECF, maybe a new kind of mistake it is still nonetheless a type of counsel error the courts have repeatedly held to be inadequate to support a determination of excusable neglect within the meaning of Fed. R. Civ. P 60(b)(1). *Id*  at 101.

### 5. There is No Meritorious Defense in the Underlying Case

        The Defendants appear to believe that simply by saying they were not selling illegal descrambling devices they have established some type of meritorious defense.  This is simply

not the case.

In the Defendants' Memorandum they state:

"In the instant matter the Plaintiffs have submitted voluminous documentation which is not been responded to by the Defendants. However, the Defendants' own affidavits submitted herewith indicate that, according to the defendant's knowledge, the vast majority of the cable boxes they were marketed were not enabled for illegal purposes and contained no means or instructions to render them capable of use for illegal purposes". *Defendants' Memorandum, Document 34 at page 15-16*

The Defendants seem to be missing the point. While it is abundantly clear that they have indeed not responded to the voluminous documentation of the Plaintiffs the Defendants' simple, self-serving, vague statements of innocence do establish a meritorious defense.

The Plaintiffs utilized multiple affidavits to support their Motion for Summary Judgment. Most importantly, the Plaintiffs utilized a 31 page affidavit of a properly disclosed, in-house expert. This expert attested to many technical matters pertaining to the evidence whereby he reached an expert conclusion that, based upon admissible evidence, and his expert examination thereof, the Defendants were indeed engaged in the sale and distribution of unauthorized coaxial cable analog descrambling devices.

The Defendants' self-serving statements to the effect that they "didn't do it" do not and cannot refute this expert testimony. More importantly, the Defendants have never declared any expert in this Civil Action and they have never served any report regarding expert testimony. The time for the declaration and disclosure regarding expert testimony has long since passed. Expert testimony on behalf of the Defendants at this point in time should be stricken and/or excluded. See *Coastal Fuels of Puerto Rico v Caribbean Petroleum Corp*. 79 F.3 182 (1st Cir. 1996). Without expert testimony there can never be a meritorious defense to this action.

Even putting aside the expert testimony issue there is still a major problem with the Defendants simple, self-serving, vague statements to the effect that the vast majority of the devices they sold were not illegal descrambling devices. The Court should take note of the facts set forth in the Plaintiffs Summary Judgment affidavits. Specifically, the Court should

take note of the fact that there were only two devices that were clearly sold by the Defendants that were recovered for examination by the Plaintiffs experts. One of these devices was sold to an undercover agent (see affidavit of William Scott Jacobs) and one was sold to cooperating third party (see affidavit of Richard Malcolm). The Plaintiffs' expert examined both devices and unequivocally determined that both devices were coaxial cable analog unauthorized illegal television descrambling devices.

The Defendants' affidavits should have specifically dealt with the fact that their self-serving statements did not match with the facts determined in the Plaintiffs' affidavits. The Defendants should have produced evidence of specific facts in direct contradiction to the Plaintiffs' evidence.  See *Grubb v KMS Patriots L.P.* 88 F. 3 1 (1st Cir. 1996)

### 6.  The Defendants' Motion Is Not "Timely"

The Defendants' Motion to Vacate the Judgment was filed on March 26, 2007.  The Court's order on the Plaintiffs' Motion for Summary Judgment was made on June 16, 2006, over nine months earlier.  The Court's Judgment in this Action was made on November 22, 2006, over four months earlier than the Defendants' Motion to Vacate.  The Defendants were clearly aware of the Judgment against them by on or about December 13, 2006, approximately 3 1/2 months earlier.

The First Circuit Court of Appeals has said that a motion pursuant to Fed. R. Civ. P 60(b)(6)  must be made within a reasonable time and that what is "reasonable" depends upon the circumstances of each case. see See *Cotto v U.S.* 993 F. 2d 274  (1st Cir. 1993). Similarly, a motion made pursuant to Fed. R. Civ. P 60(b)(1) must also be made in a  reasonable time; additionally such a motion must be made within one year of the order from which relief is sought.  See *Kagan v Caterpillar Tractor Co.* 795 F.2d 601(7th Cir. 1986).

Relief from the Judgment without relief from the order on Summary Judgment will not help the Defendants to any great extent; they would then only then have the ability to address the attorney's fees issue.  Accordingly, even though there is no motion for relief from the

Summary Judgment Order before this Court, it is the date of that Order from which the pertinent timeframe could be measured.  It has been over nine months since the Summary Judgment Order entered and the Defendants are only now moving to vacate the Judgment that the Order is based upon.  There can be no reasonable explanation as to why the Defendants waited nine months to bring this Motion.

As was said above, the Defendants cannot simply "just put this case aside" and not have consequences.  The Court should recall that in January of *2006* the Plaintiffs Counsel's office had sent an e-mail to Defense Counsel imploring him to contact latest Counsel because the Summary Judgment would be forthcoming and a draft of the Summary Judgment Motion had already been sent to Defendants' Counsel in December of 2005.  With these facts it was clearly not reasonable for the Defendants simply to ignore the case, make no inquiries into the docket, and do nothing for months on end. This is still the case even if the Court uses the date of the Judgment, November 2006, as the pertinent date.

Even if the Court finds that it was somehow reasonable not to take note of the circumstances until December of 2006 when Plaintiffs' Counsel contacted Defendants' Counsel, the delay from December till now is still inexcusable.  The Defendants took 3 1/2 months to make a Motion to Vacate Judgment but they did not even proffer their proposed response to the Motion for Summary Judgment with their Motion to Vacate.  It is absolutely unreasonable to further delay the already untenable situation by waiting additional months to bring the Motion to Vacate the Judgment and then not even deal with the Motion for Summary Judgment.

However it is measured and from what ever possible pertinent date utilized, where the Plaintiffs filed a motion for Summary Judgment in February of *2006* and the Defendants are now moving to vacate the Judgment in March of *2007* their Motion cannot be deemed reasonable and timely.

**IV. Conclusion**

14

For all of the reasons set forth above the Plaintiffs object to the Defendants' untimely, ungrounded Motion to Vacate the Judgment. The Plaintiffs pray that the Motion be denied and that, in conformity with the underlying statutory remedies, the Plaintiffs are granted an additional award of attorneys fees for the attorneys time incurred to oppose the Motion to Vacate.

While the Plaintiffs vigorously oppose any relief for the Defendants as the substantive elements of the Judgment, the Plaintiffs would not object to the Court rectifying an apparent clerical error in the amount of pre-judgment interest granted to the Plaintiffs. It appears that due to a clerical error, the interest accrued is recorded as *$6,3740.64* (*sec*.). Even though there is a comma between the numeral six (6) and the numeral (3) three, this amount could be construed as $63,740.64. Yet the actual interest accrued apparently should read to be $6,374.64. This modification could save the Defendants a monetary amount greater than $57,000.00.

| | |
|---|---|
| 4/6/2007 | /s/ John M. McLaughlin |
| Date | John M. McLaughlin, Esq. |
| | **Green, Miles, Lipton & Fitz-Gibbon, LLP** |
| | 77 Pleasant Street |
| | P.O. Box 210 |
| | Northampton, MA 01061-0210 |
| | Telephone (413) 586-0865 |
| | BBO No. 556328 |

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007, a copy of the foregoing document was filed electronically.  Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access the filing through the Court's electronic filing system.

/s/ John M. McLaughlin
John M. McLaughlin